COURT OF APPEALS OF VIRGINIA

Present:    Judges O'Brien, Russell and Retired Judge Bumgardner[*]
Argued at Norfolk, Virginia

JOSEPH JOHN MELICK

                                                          OPINION BY
v.        Record No. 1564-17-1                JUDGE WESLEY G. RUSSELL, JR.
                                                          JULY 31, 2018

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                              Wilford Taylor, Jr., Judge

          Anthony J. Balady, Jr., Assistant Public Defender, for appellant.

          Rachel L. Yates, Assistant Attorney General (Mark R. Herring,
          Attorney General, on brief), for appellee.


       Joseph John Melick was convicted in a bench trial of one count of grand larceny in

violation of Code § 18.2-95.  On appeal, he asserts that the trial court erred in the admission of

certain evidence and in finding the evidence sufficient to support his conviction.  For the reasons

that follow, we affirm the judgment of the trial court.

                                    BACKGROUND

       "On appeal, we will consider the evidence in the light most favorable to the

Commonwealth, as it prevailed in the trial court."  Whitehurst v. Commonwealth, 63 Va. App.

132, 133, 754 S.E.2d 910, 910 (2014).  This principle requires us to "discard the evidence of the

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

favorable to the Commonwealth and all fair inferences to be drawn therefrom."  Parks v.

_____

      [*] Judge Bumgardner participated in the hearing and decision of this case in his capacity
as a senior judge of this Court prior to July 1, 2018 and thereafter by designation pursuant to
Code § 17.1-400(D).

Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and internal quotation marks omitted).

So viewed, the evidence established that, in the fall of 2015, Mary Neal hired a home improvement company to perform repairs at her home, which is located in the Buckroe section of Hampton. Workers for the company spent approximately five months working on various projects at the home. One of the workers was Melick.

In February of 2016, Melick contacted Neal. He told her that he was losing his home and would be forced to live on the street. He asked if he could stay at Neal's home.

Despite some initial resistance to the idea, Neal eventually agreed to allow Melick to stay at her house. Melick was to pay $100 a week in rent and to cover his own expenses, such as paying for his own groceries. By August, Melick had fallen behind regarding his rent payments and had not been covering his expenses. He left the residence in mid-August.

While Melick lived in her home, Neal was a field biologist for the City of Newport News. Because her job required her to work outdoors, she did not "have the opportunity to wear [her] good jewelry on [the] job." On September 6, however, she had an interview for a new position with the city. In dressing for the interview, she went to the armoire where she kept her "good jewelry."

When Neal opened the armoire, she discovered that many pieces of her jewelry were missing. At trial, she described various pieces of jewelry that were missing, the majority of which consisted of sterling silver pieces that had been signed by the designer. She testified that the missing jewelry was worth far in excess of $200 and that Melick did not have permission to take any of it. During her testimony, photos of Neal wearing some of the missing jewelry prior to it going missing were introduced into evidence.

After discovering the jewelry missing, Neal went to the Hampton Roads Exchange, a business that both Neal and Melick previously had patronized. The store was in the business of purchasing items of personal property, such as jewelry, for resale.[1]

At the store, Neal identified some of her missing jewelry, which she characterized as "insignificant trinkets." When she informed the store that the items had been stolen from her, the identified items were released to her.

Neal then contacted the police. She also engaged the services of Ronald Fino, a "friend of a friend," who is a private investigator. On September 14, 2016, Fino contacted Melick and arranged to return some clothing that Melick had left when he moved out of Neal's home. While returning the clothing, Fino engaged Melick in conversation. According to Fino, Melick admitted to taking the missing jewelry, but stated that "it was owed to him." Fino asked Melick if he had "pawned" the jewelry. Melick responded that he had done so, but he would not tell Fino where.

John Worth and Kenny Cantrell, the owners of the Hampton Roads Exchange, testified at trial regarding the store's operations. The store was open Monday through Saturday, with one of the two owners working in the store every day. When a seller came in with jewelry, a representative of the store made a determination as to what the item was made of and what it was worth. Depending on the evaluation, the store might offer to purchase the item.

When a potential seller accepted the store's offer, a store representative would ask the seller for photo identification, such as a driver's license. The representative would make a copy

---

[1] One of the owners explained that Hampton Roads Exchange is not technically a pawn shop because it "cannot lend money by law, [it] can only buy." Although not a pawn shop, the Hampton Roads Exchange appears to fall within the definition of "secondhand dealer" as defined in § 27-1 of the Hampton City Code. If deemed to fall outside the scope of § 27-1 because of its purchase of certain items of jewelry, the store would fall within the definition of a "precious metal dealer" as defined in § 27-1.1 of the Hampton City Code.

of the identification, prepare paperwork related to the transaction (including recording information about the seller), and take pictures of the items. Within a few days all of the information collected, including copies of the identification and the pictures of the item(s) the store had purchased, as well as descriptions of the item(s) purchased and the seller, would be uploaded by either Cantrell, Worth, or one of their wives, onto the website LeadsOnline.com ("LeadsOnline"). The uploaded information to LeadsOnline also includes information regarding the date and time of the transaction; a typewritten entry listing the seller's address, date of birth, identification number, and telephone number; and the identity of who conducted the transaction on behalf of the store. Cantrell testified that collecting and uploading this information is "required," is done for every transaction, and is done in the ordinary course of the store's business.[2]

Police detective George Barker was assigned to investigate the jewelry theft. He became aware of the items sold by appellant through LeadsOnline. He explained that LeadsOnline is an internet service based in Texas that allows pawn shops, second-hand stores, and scrap and precious metal dealers to upload records regarding what they acquire for resale. Agents of the businesses upload information into the system at no charge to the business. LeadsOnline then enters into agreements with law enforcement agencies that allow the agencies to access the uploaded information for investigative purposes. The City of Hampton has such an agreement with LeadsOnline for police officers to access the information.

---

[2] In the proceeding below, no evidence was offered to establish whether the collection of the information was merely a "requirement" of the store or whether there was an actual legal requirement. In ruling on Melick's hearsay objection the trial court referenced it being a legal requirement imposed by the City of Hampton. Regardless of whether the store is viewed as a "secondhand dealer" or as a "precious metal dealer," the Hampton City Code imposed information collection and recordkeeping requirements on the store, which include obtaining images of the items purchased and an image of the photo identification provided by the seller at the time of purchase. See Hampton City Code §§ 27-6 & 27.1-21.

After speaking with Neal, Barker conducted a search of LeadsOnline using Melick's name. The search produced documents regarding nine transactions at the Hampton Roads Exchange between April and June 2016. Each of the documents contained the information that Cantrell had testified an agent of the store was required to collect at the time of the transaction. This included a description of Melick as the seller, a copy of his driver's license, a description of the jewelry, and a picture of each item of jewelry the store had purchased. Some of the printouts, marked as Commonwealth's Exhibit 3, identified the store clerk who purchased the items as Ken; the remainder, marked as Commonwealth's Exhibit 4, identified the store clerk who had purchased the items as John. Barker testified that, as the end user, he only could print the documents from the website; he did not have the ability to alter them.

The Commonwealth showed the LeadsOnline printouts to Worth and Cantrell during their testimony. Although neither remembered the specific transactions reflected in the documents, they were able to identify the documents as being downloaded from LeadsOnline. Cantrell testified that the documents were the result of the information collection and uploading process that Cantrell and later Worth testified was required to be done for every purchase at the store.

The Commonwealth moved for the admission of Exhibits 3 and 4 into evidence. Melick objected on hearsay grounds. The Commonwealth argued that the documents fell within the business records exception to the hearsay rule. The trial court, agreeing that the documents fell within the business records exception, admitted the documents into evidence.

After the documents had been admitted into evidence, the Commonwealth recalled Neal as a witness. At that time, Neal confirmed that the items pictured in the documents were pieces of her jewelry that had gone missing. The Commonwealth then rested its case.

Melick moved to strike the Commonwealth's evidence, arguing that the evidence was insufficient to support a conviction for grand larceny. The trial court denied the motion. Melick elected not to put on any evidence, rested his case, and renewed his motion to strike. The trial court again denied the motion and, after hearing closing arguments, found Melick guilty of grand larceny.

Melick now appeals his conviction, asserting that the trial court erred in two respects. First, he argues that the trial court erred by admitting into evidence the printouts from LeadsOnline because the documents constituted hearsay and did not fall within the business records exception. Next, he asserts that the evidence was insufficient to support his conviction for grand larceny.

## ANALYSIS

### I. The LeadsOnline Printouts

#### A. Standard of Review

There is no dispute that the LeadsOnline printouts are "statement[s], other than [those] made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted . . . ," Va. R. Evid. 2:801(c), and thus, constitute hearsay. Hearsay "is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule . . . ." McDowell v. Commonwealth, 48 Va. App. 104, 109, 628 S.E.2d 542, 544 (2006) (quoting Robinson v. Commonwealth, 258 Va. 3, 6, 516 S.E.2d 475, 477 (1999)).

The burden of establishing a statement or document that is otherwise inadmissible hearsay falls within a recognized exception to the hearsay rule is borne on the proponent of the statement or document. Id. The proponent must establish the elements of the exception by a preponderance of the evidence. Lynch v. Commonwealth, 46 Va. App. 342, 348, 617 S.E.2d 399, 402 (2005).

As with most evidentiary questions, "[w]hether an adequate foundation has been laid for a hearsay exception involves an exercise of discretion by the trial court." Joyce v. Commonwealth, 56 Va. App. 646, 663, 696 S.E.2d 237, 245 (2010). Thus, the trial court's conclusion is subject to "the deferential abuse-of-discretion standard of review." Id. Furthermore, "if the admissibility of a[n otherwise] hearsay statement is conditioned upon a finding of certain predicate facts," the decision as to whether those facts have been established belongs to the "the trial court, acting as a fact finder . . . ." Lynch, 46 Va. App. at 348-49, 617 S.E.2d at 402 (internal quotation marks and citations omitted). Such findings of fact by the trial court are accorded the same weight as a finding of fact by a jury, id. at 349, 617 S.E.2d at 402; thus, they can only be disturbed if plainly wrong or when there is no evidence to support them.

B. Business Records Exception

The Commonwealth argues, and the trial court found, that the documents at issue here fall within the business records exception to the hearsay rule. The business records exception is set forth in Rule 2:803(6) of the Virginia Rules of Evidence, which provides that:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . [a] record of acts, events, calculations, or conditions if: (A) the record was made at or near the time of the acts, events, calculations, or conditions by--or from information transmitted by--someone with knowledge; (B) the record was made and kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making and keeping the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 2:902(6) or with a statute permitting certification; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Before the various elements of Rule 2:803(6) can be addressed, a preliminary question is whose records are at issue. Implicit in the trial court's resolution of the issue is the premise that

the printouts are the records of the Hampton Roads Exchange. This conclusion is supported by the evidence.

Although Barker accessed the records by searching LeadsOnline and not by contacting the store, it is undisputed that the information contained in the printouts was collected at the store and was uploaded by the store onto LeadsOnline. From the evidence, LeadsOnline did not create the records. At most, LeadsOnline provided a form to allow the store to upload the information collected, stored that information in its database, and rendered the information collected by the store searchable by law enforcement organizations that contract with LeadsOnline. No evidence suggests that LeadsOnline altered or changed any of the information uploaded by the store. In fact, as a law enforcement end user, Barker testified that he had no ability to alter the information when he searched and ultimately downloaded the printouts. Thus, although the records may have been stored on a server controlled by LeadsOnline, the records were *made* by agents of the Hampton Roads Exchange. Cf. Frank Shop v. Crown Cent. Petroleum Corp., 261 Va. 169, 176, 540 S.E.2d 897, 901 (2001) (noting that the business records exception "deals with records made . . . in the regular course of business" (quoting Ford Motor Co. v. Phelps, 239 Va. 272, 276, 389 S.E.2d 454, 457 (1990))).

The fact that the information is stored by an entity other than the business where the records were made does not alter the fundamental nature of the records. In an era of computerized records being stored in the "cloud," it is not at all unusual for an entity's records to be stored on servers owned or controlled by a different entity. Nothing about the arrangement here causes the records created by the store to change character merely because the store uploaded the records to LeadsOnline.

Melick concedes as much. At oral argument in this Court, Melick, having been asked a question that characterized the record as supporting the conclusions that the printouts constituted

the records of the store and that LeadsOnline "is essentially a giant virtual file cabinet," responded that the characterization was "an accurate statement." Accordingly, for the reasons stated, it was not error for the trial court to conclude that the printouts constituted the records of the Hampton Roads Exchange.[3]

<blockquote>1. Record made at or near the time of the acts, events, calculations, or conditions by--or from information transmitted by--someone with knowledge</blockquote>

Rule 2:803(6)(A) contains two requirements. First, the record in question must have been made "at or near the time of the acts, events, calculations, or conditions"– here, the store's purchase of the jewelry in question. This is often referred to as the contemporaneous requirement. Second, to satisfy Rule 2:803(6)(A), the record must have been prepared by "someone with knowledge" of the transaction or by someone who created the record based on "information transmitted by . . . someone with knowledge" of the transaction.

Regarding the requirements of Rule 2:803(6)(A) as well as other subsections of the Rule, Melick argues the fact that neither Worth nor Cantrell recalls participating in the specific transactions in question prevents the Commonwealth from meeting the requirements of the Rule. We note, that despite neither having specific memories of the transactions, the evidence was sufficient to allow the trial court to conclude that they conducted the transactions. The records list the clerks responsible for the transactions as "Ken" and "John." Cantrell testified that the

---

[3] We note that, in State v. Nelson, 25 So. 3d 905 (La. Ct. App. 2009), the Louisiana Court of Appeal for the Second Circuit addressed printouts from LeadsOnline in light of Article 803 of the Louisiana Code of Evidence, a business record exception provision that is similar, but not identical, to our Rule 2:803(6). In that case, which involved the resale of stolen scrap metal, the court held that the printouts from LeadsOnline "were not those of a scrap dealer or related business; rather, they were reports by a third party of what purported to be submitted business records." Id. at 914. From this conclusion, the court found the printouts inadmissible because of "the absence of testimony from the custodian of the records or other qualified witness" from LeadsOnline. Id. For the reasons stated above and on the record before us, we reach the opposite conclusion regarding the provenance of these printouts, which, as detailed below, leads to a different result.

reference to a clerk named "Ken" on the records was a reference to him, and Worth answered "[y]es" when asked if he was "the John that would be the clerk" listed on the records. In any event, Melick's fixation on their lack of specific memories is misplaced because one of the main rationales for the business records exception is that an individual clerk will record the particulars of a transaction accurately when it occurs but that he or she will have no recollection of the specifics of the transaction, days, months, or even years later.

a. Created at or near the time of the transaction

Melick argues that the Commonwealth failed to establish that the records were created at or near the time of the transactions, arguing that the evidence fails to establish who created the records and exactly when the records were created. He contends that the evidence "presented does not establish a timeline," and thus, the trial court erred in admitting the records pursuant to the business records exception.

Although the testimony failed to establish with certainty which agent of the store uploaded the information collected to LeadsOnline, the evidence regarding the "required" practice regarding collecting the information made certain things clear. The testimony was that the information forming the record, including the photograph of the jewelry and the copy of the seller's driver's license, is collected at the time of the transaction. That this occurred in this case is demonstrated by the store having copies of Melick's driver's license for each recorded transaction. As Melick conceded at oral argument, the copy of the seller's driver's license necessarily is obtained at the time of the transaction. Accordingly, the evidence was sufficient for the trial court to conclude that a preponderance of the evidence supported the conclusion that the information contained in the records was collected at the time of the relevant transactions.

Melick next argues that there is no evidence establishing exactly when the information was uploaded, and thus, the Commonwealth failed to meet Rule 2:803(6)(A)'s contemporaneous

requirement. Even assuming that uploading the information is the key event as opposed to its collection, the trial court did not err in concluding the record was sufficiently contemporaneous with the transactions to satisfy the business records exception.

We have never set a definite time range in which a record must be created to satisfy Rule 2:803(6)(A)'s timing requirement; rather, Virginia's appellate courts consistently have recognized that what constitutes contemporaneous creation of a record will depend on the individual facts and circumstances of a particular case. In fact, we previously have recognized that the contemporaneous requirement can be satisfied in circumstances when the exact amount of time between the collection of the information comprising a record and the creation of the final record is "unknown." Jones v. Commonwealth, 38 Va. App. 231, 239, 563 S.E.2d 364, 368 (2002) (citing Simpson v. Commonwealth, 227 Va. 557, 566-67, 318 S.E.2d 386, 392 (1984)). In reaching this conclusion, we held that "[c]ontemporaneousness is an indicia of reliability . . . ," id. at 239, 563 S.E.2d at 367, and that any lack of specificity regarding when a record was created can be offset when "the trustworthiness of the data [is] clear," id. at 239, 563 S.E.2d at 368.

Here, the evidence established sufficient trustworthiness in the information contained in the records. Even assuming the information was uploaded to LeadsOnline a few days after the transactions in question, the testimony was that the uploading process only involved typing in the same information that had been collected at the time of the transaction and attaching the photographic files of the item purchased and the seller's photo identification. The very nature of the photographic files is that they remain unchanged from their initial collection. Thus, the information collected at the time of the transactions and subsequently uploaded to LeadsOnline was sufficiently trustworthy to allow the trial court to conclude that the timing requirement of Rule 2:803(6)(A) was satisfied.

### b. Created by--or from information transmitted by--someone with knowledge

As noted above, the evidence was sufficient to allow the trial court to conclude that Cantrell and Worth were the store's agents who processed the transactions and collected the information that ultimately was uploaded to LeadsOnline. The evidence was therefore sufficient for the trial court to conclude that each was "someone with knowledge" of both the transactions and the information collected as a result of those transactions for the purpose of Rule 2:803(6)(A).

Regarding the uploading of the information to LeadsOnline, it is clear that whoever did so either was a person with knowledge or obtained the information from a person with knowledge. Although Cantrell denied uploading the information by himself, he testified that the information was uploaded by "either Johnny [Worth] and his wife . . . or I put it in with my wife." Worth testified that it likely was uploaded by either "Kenny or his wife." In the light most favorable to the Commonwealth, the trial court could conclude from the evidence that the information was uploaded by some combination of four people: Worth, Cantrell, and their respective wives.

The testimony regarding the store's procedures made clear that, regardless of which of the four uploaded the collected information to LeadsOnline, the information came from the clerk who conducted the transaction. See 2 Kenneth S. Broun, McCormick on Evidence § 290, at 445-46 (7th ed. 2013) (recognizing that identifying a specific employee who played a role in the creation of a particular record may be "impossible" and noting that the requirements of the exception can be established "by evidence of [the business'] routine practice and a reasonable assumption that such practice was followed with regard to a particular matter . . . ." (footnotes omitted)). By definition, the person who conducts a transaction has knowledge of that transaction. Furthermore, Melick conceded that the copying of the photo identification occurs at

- 12 -

the time of the transaction, meaning that the copy of the photo identification that is ultimately uploaded necessarily comes from a person with knowledge. Accordingly, the evidence was sufficient to allow the trial court to conclude that the requirements of Rule 2:803(6)(A) were satisfied.

2. Record made and kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit

Rule 2:803(6)(B) requires that the records in question be "made and kept in the course of a regularly conducted activity of a business, organization, occupation, or calling . . . ." Here, it is undisputed that records were made as a result of the store's purchases of pieces of jewelry and that the store regularly engaged in the activity of purchasing items of personal property, such as jewelry, for the purpose of resale. In fact, this activity was the business model of the Hampton Roads Exchange. Melick conceded this at oral argument in this Court. Accordingly, the evidence was sufficient to satisfy the requirement of Rule 2:803(6)(B).

3. Making and keeping the record was a regular practice of the activity

Rule 2:803(6)(C) requires that the "making and keeping the record was a regular practice of" the business related to the activity described in Rule 2:803(6)(B), here the purchase of jewelry for resale. It is undisputed that agents of the store were required to collect the information composing the records, including a photograph of the item and a copy of the seller's photo identification, for every such transaction. Melick conceded this at oral argument in this Court. Accordingly, the evidence was sufficient to satisfy the requirement of Rule 2:803(6)(C).

4. Facts establishing that the record falls within the exception established by the testimony of the custodian of the record or another qualified witness

Rule 2:803(6)(D) requires that the proponent of the record establish the requirements of Rule 2:803(6) through "the testimony of the custodian of the record or another qualified witness." Melick argues that neither Worth nor Cantrell were the custodian of the records, and

therefore, the Commonwealth failed to meet the requirement imposed by Rule 2:803(6)(D). We disagree.

Melick correctly notes that neither Worth nor Cantrell were the custodian of the records and, in fact, specifically disclaimed that title in their testimony. However, this does not address whether either (or both) were "another qualified witness" for the purposes of Rule 2:803(6)(D).

We acknowledge that the phrase "another qualified witness" is not self-defining, and thus, its meaning is highly dependent on context. Neither party identified a Virginia appellate decision addressing the meaning of "another qualified witness" as used in Rule 2:803(6)(D). Accordingly, we turn to decisions interpreting the business records exception that predate the adoption of the Rule for guidance. See Va. R. Evid. 2:102 ("Common law case authority, whether decided before or after the effective date of the Rules of Evidence, may be . . . considered in interpreting and applying the Rules of Evidence.").

In prior cases, Virginia appellate courts have found that persons who are familiar with the regular operations of the business and the circumstances under which the subject records normally are created are competent to establish the requirements of the business records exception even if they are neither the creator nor the formal custodian of the record. See, e.g., French v. Virginian Ry. Co., 121 Va. 383, 93 S.E. 585 (1917) (holding that railroad claims adjuster was sufficiently familiar with business operations to be competent to establish that records created by station masters and kept by dispatchers fell within the business records exception); Lee v. Commonwealth, 28 Va. App. 571, 576, 507 S.E.2d 629, 632 (1998) (holding that company's fraud investigator, who was neither the custodian nor the creator of certain computer records, was sufficiently familiar with business operations to testify regarding the requirements of the business records exception); Sparks v. Commonwealth, 24 Va. App. 279, 283-84, 482 S.E.2d 69, 71 (1997) (finding a vice-president of a bank sufficiently familiar with

bank policy regarding the creation of certain records that she was competent to testify regarding the requirements of the business records exception despite the fact that she did not create the records and was not their custodian).

Here, the evidence established that Cantrell and Worth were the owners of the store and that one of them was present every day the store was open. Cantrell testified that collecting the relevant information, including obtaining pictures of the items purchased and a copy of the seller's photo identification, and uploading the information to LeadsOnline were "required" for every transaction. As noted above, the evidence was sufficient to allow the trial court to conclude that Cantrell and Worth, in addition to owning the business, actually conducted the transactions in question. As the owners of the business who also worked the counter and purchased items for the store, Cantrell and Worth were sufficiently familiar with the operations of the business and the policy regarding the creation of the records to satisfy the "another qualified witness" requirement of Rule 2:803(6)(D).

5. Neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness

The final condition necessary to establish that a document falls within the business records exception is essentially an overarching check on the exception. Rule 2:803(6)(E) provides that a record falls within the exception only if "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Thus, if there is some reason to doubt the trustworthiness of the source of the information or the circumstances of

its preparation, the record will not fall within the exception even if the other requirements of Rule 2:803(6) have been established.[4]

Nothing in the record suggests that the trial court abused its discretion in finding that the records at issue were sufficiently trustworthy. As noted above, representatives of the store prepared the record for every transaction. From the evidence, the trial court reasonably could infer that this was done to protect the store in the event it purchased a stolen item and to comply with local ordinances regarding buying items such as jewelry for resale.

For example, pursuant to Hampton City Code § 27-6, a "secondhand dealer" must keep "an accurate and legible record" containing specified information, including "[t]he full name, residence address, telephone number, and driver's license number . . . of the person selling . . . the article"; "[a] digital image of the identifying credential used by the person involved in the transaction"; and "[a] digital image of the article . . . bought . . . ." Furthermore, the secondhand dealer must make such records available to law enforcement for inspection. Hampton City Code § 27-3. The failure to comply with the recordkeeping and access requirements gives rise to criminal penalties. Hampton City Code § 27-3.[5]

_____

[4] Although the businesses actually relying on the record is not part of the rule as written, past cases have often noted that the ultimate reliability of business records is established by the business reliance on the records. See, e.g., "Automatic" Sprinkler Corp. v. Coley & Petersen, Inc., 219 Va. 781, 793, 250 S.E.2d 765, 773 (1979) ("The trustworthiness or reliability of the records is guaranteed by the regularity of their preparation and the fact that the records are relied upon in the transaction of business by the person or entities for which they are kept."). Consistent with the text of the rule, we do not read such reliance as a hard and fast requirement, but rather, as one way of establishing sufficient trustworthiness to meet the requirements of Rule 2:803(6)(E). In any event, the evidence was sufficient to allow the trial court to conclude that the records created here were relied upon by the store to meet its internal recordkeeping and access requirements as well as any imposed by the Hampton City Code.

[5] To the extent that the Hampton Roads Exchange is deemed a "precious metal dealer" as defined in Hampton City Code § 27-1.1, similar reporting and access requirements apply. See Hampton City Code §§ 27.1-21 & 27.1-23.

Consequently, the store had every incentive to keep accurate records and uploading those records to LeadsOnline provided the Hampton police with access to those records. Given the testimony regarding the requirement that the information be collected and recorded and the benefits to the business of keeping accurate records, including but not limited to avoiding criminal liability, the trial court did not abuse its discretion in concluding that the trustworthiness requirements of Rule 2:803(6)(E) were met.

## II. Sufficiency of the evidence

### A. Standard of Review

In reviewing a challenge to the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We do not "substitute our judgment for that of the trier of fact . . . ," Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002), and "will not disturb the trial court's judgment unless it is plainly wrong or without evidence to support it," Hedrick v. Commonwealth, 257 Va. 328, 340, 513 S.E.2d 634, 641 (1999).

On appeal, Melick raises two discrete arguments as to why the evidence was insufficient to support his conviction for grand larceny. First, he contends that the evidence failed to establish that he, as opposed to someone else, took the items in question. He also argues that the evidence was insufficient to establish that the value of the stolen items exceeded the $200 grand larceny threshold that was then in place.[6]

---

[6] As of July 1, 2018, the grand larceny threshold has been raised from $200 to $500. See 2018 Va. Acts Chs. 764 & 765 (amending Code § 18.2-95). The $200 threshold applies to Melick because that was the relevant amount when he committed the offense in 2016.

Before reaching Melick's appellate arguments, we note that, at trial, Melick twice moved to strike the evidence.[7] In his motions to strike and in his closing argument, Melick argued that the evidence was insufficient to establish that the stolen items were worth more than $200; however, in neither his motions to strike nor his closing argument did Melick argue that the evidence was insufficient to establish that he was the person who stole the times.[8]

## B. Evidence of Identity

Melick's failure to argue at trial that the evidence did not establish that he was the person who stole the items precludes us from reaching the issue on appeal. Rule 5A:18 provides, in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." The purpose of the Rule "is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." Creamer v. Commonwealth, 64 Va. App. 185, 195, 767 S.E.2d 226, 231 (2015). In order to resolve an issue, a trial court must be alerted to the precise issue being raised, see Kelly v. Commonwealth, 42 Va. App. 347, 354, 592 S.E.2d 353, 356 (2004), and thus, Rule 5A:18 requires that arguments be made with specificity in order to preserve an issue for appeal. Nelson v. Commonwealth, 50 Va. App. 413, 420-21, 650 S.E.2d

---

[7] Melick did not put on any evidence; however, he moved to strike the evidence twice, once after the Commonwealth rested and again after he informed the trial court that he elected to put on no evidence.

[8] In fact, in the motion to strike, Melick's argument assumed that he was the person who had taken the missing items. Specifically, Melick argued that "in pawning the jewelry [he] use[d] his own identification [and] continue[d] to live at [Neal's] house after the jewelry is pawned . . . ." According to Melick, selling the jewelry using his own identification and remaining in Neal's home were "not the actions of someone who's trying to get away with something . . . ," and thus, he likely had Neal's permission to sell the items. Having made this argument, he then argued that "if the [c]ourt is inclined to believe that [he] did not have permission to pawn those items [and that he] took them without permission," the evidence was insufficient as to value.

562, 566 (2007); see also Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) (holding that, pursuant to Rule 5A:18, "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review"). Accordingly, because Melick failed to raise the identity argument in the trial court, Rule 5A:18 bars our consideration of that specific argument on appeal.

Recognizing the potential Rule 5A:18 problem, Melick requests that we reach the issue pursuant to Rule 5A:18's ends of justice exception. "The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" Pearce v. Commonwealth, 53 Va. App. 113, 123, 669 S.E.2d 384, 390 (2008) (quoting Bazemore v. Commonwealth, 42 Va. App. 203, 219, 590 S.E.2d 602, 609 (2004) (*en banc*)). "In order to avail oneself of the exception, a *defendant must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) (emphasis added).

Melick can make no such showing. The evidence presented includes Melick's confession that he was the person who took the stolen items. The Commonwealth adduced additional evidence that was more than sufficient to corroborate Melick's confession. As a result, the evidence not only failed to demonstrate a miscarriage of justice, but was sufficient to allow a reasonable factfinder to conclude beyond a reasonable doubt that Melick was the person who stole the jewelry. Accordingly, Rule 5A:18's ends of justice exception does not apply.

C. Evidence of Value

As he did in the trial court, Melick contends that the evidence was insufficient to establish that the jewelry stolen was worth more than $200, which is the minimum value required to support his conviction for grand, as opposed to, petit larceny. We disagree.

"It is well established that the opinion testimony of the owner of personal property is competent and admissible on the question of the value of such property . . . ." Burton v. Commonwealth, 58 Va. App. 274, 280, 708 S.E.2d 444, 447 (2011) (internal quotation marks and citation omitted). Here, as Melick concedes, Neal, the owner of the stolen jewelry, testified without objection that the stolen jewelry was worth more than $200. The trial court, sitting as factfinder, credited Neal's testimony as to value. Accordingly, there was sufficient evidence before the trier of fact to establish that the grand larceny threshold was met.[9]

CONCLUSION

For the reasons stated above, we conclude that the trial court did not abuse its discretion in admitting into evidence the LeadsOnline printouts under the business records exception to the hearsay rule. Furthermore, we find that the evidence was sufficient to allow the trial court, sitting as factfinder to conclude beyond a reasonable doubt that Melick was guilty of grand larceny. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

---

[9] Although the Commonwealth disputes his characterization of the evidence being in conflict, Melick contends that there was conflicting evidence regarding value presented and that, relying on such evidence, the trial court should have concluded that the stolen jewelry was worth less than $200. Even if we accept that there was conflicting evidence regarding value, "[c]onflicts in the evidence are resolved by the fact finder, and such conflicts are not revisited on appeal unless the evidence is such that reasonable [persons], after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion." Molina v. Commonwealth, 47 Va. App. 338, 369, 624 S.E.2d 83, 98 (2006) (internal quotation marks and citations omitted). Because there was nothing inherently unbelievable in Neal's testimony regarding value, the trial court was free to accept it.