COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, O'Brien and Russell
Argued at Lexington, Virginia

LAUREL ANSELL

v.        Record No. 0765-18-3

HARRISONBURG/ROCKINGHAM
  SOCIAL SERVICES DISTRICT

MEMORANDUM OPINION* BY
JUDGE WILLIAM G. PETTY
JANUARY 15, 2019

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

Shelly R. James (John Elledge & Associates, on briefs), for
appellant.

(Kim Van Horn Gutterman, Assistant County Attorney, on brief), for
appellee.  Appellee submitting on brief.

W. Andrew Harding (Convy & Harding, PLC, on brief), Guardian
*ad litem* for the infant children.

In this appeal, Laurel Ansell challenges the termination of her residual parental rights

pursuant to Code § 16.1-283(C)(2).  She argues that the circuit court "erred in admitting records

from the Community Services Board as business records and, therefore, admissible hearsay."

She also argues the circuit court erred in finding "clear and convincing evidence that proved

[Ansell] had not remedied th[e] conditions that led to the children being placed in foster care and

that proved termination was in the children's best interest."

BACKGROUND

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the proceedings as are necessary to the parties' understanding of the disposition of this appeal. We view the facts in the light most favorable to the prevailing party below, granting to it the benefit of any reasonable inferences; we review issues of law *de novo*. Hall v. Commonwealth, 55 Va. App. 451, 453 (2009).

On March 23, 2017, Ansell was taken into custody pursuant to an emergency commitment order and was admitted to a hospital for psychological evaluation. As part of the admission process, the Harrisonburg-Rockingham Community Services Board (the Board) completed a pre-admission screening report that included historical information and third-party statements from various sources. Ansell remained hospitalized until March 29, 2017, at which time a commitment hearing was held in Rockingham County General District Court. The district court refused to grant the Board's requested involuntary inpatient commitment and ordered that Ansell be released with a mandatory outpatient treatment (MOT) order. The MOT order, issued for the maximum period of ninety days, required Ansell to engage in medication management services as needed, attend Support To Access Recovery Services (STARS) meetings as scheduled, and follow recommendations of Board providers. The STARS services focus on dealing with drug addiction. The court renewed the MOT order without modification through February 2018 when the trial for termination of Ansell's parental rights was held.

Because there were no other adults present in the home on March 23, 2017, when Ansell was taken involuntarily to the hospital, the Harrisonburg/Rockingham Social Services District (HRSSD) placed Ansell's two young daughters in foster care. HRSSD requested a preliminary removal order and a finding of abuse and neglect, which the Harrisonburg Rockingham Juvenile and Domestic Relations District Court granted. The district court found the children were "without parental care or guardianship caused by the unreasonable absence or the mental or physical incapacity of the child[ren]'s parent . . . [based on the fact Ansell] was psychiatrically

hospitalized at [the hospital] from 3/23/2017 to 3/29/2017." In January 2018, HRSSD petitioned to terminate Ansell's residual parental rights pursuant to Code § 16.1-283(C)(2) on the basis that Ansell had failed to substantially remedy the conditions that caused the children to be placed in foster care. The trial court terminated Ansell's residual parental rights, and this appeal followed.

ANALYSIS

A.  Admission of Hearsay Evidence

Ansell argues that the trial court erred in admitting medical records created by the Board, which contained hearsay and did not fall within a recognized hearsay exception.

HRSSD called the custodian of the medical records to testify. The custodian agreed that she was the custodian of the records, that the records generally are made close in time to the interaction with the patient, and that there is limited access to the records.[1] On cross-examination, the custodian testified that the records at issue were "the records we provided," but "there could be" other records. The custodian confirmed that the records reflected screening only and did not reflect any treatment. When asked if the documents "include[d] information that whoever typed them up would not necessarily have known," the custodian testified, "That's not part of my, my job." She further testified that she did not know the content of the records that were provided. She knew only the title of each document. The following was then asked.

> [Counsel:]  And so you don't know if the people who put this
>               information into the record, had any firsthand knowledge of
>               the information that they put in the record?
> [Custodian:]  Again that's not part of my, my job.
> [Counsel:]  Okay.  So, so the answer is you cannot say that?
> [Custodian:]  Correct.

---

[1] Of the custodian's ten responses on direct examination, the longest was the four-word name of her employer. Seven of the responses were either "yes" or "correct" in answering HRSSD's questions.

HRSSD did not ask any additional questions on re-direct and did not offer any other witness to lay a foundation for the records.

Ansell objected to admission of the records on the basis that the "records contain information that is not within the knowledge of the person putting the information into the record."[2]

The trial court ruled,

> I find that the evidence establishes that she is the custodian of these records. She's laid the foundation to indicate that these are accurate copies of the records that are in her custody. And the record also reflects that anything that is contained in those files, [Ansell's counsel and Ansell] have had access to, giving them the ability to cross examine on the records or point out any inconsistencies. Overruled. They're in evidence.

Ansell argues the trial court erred in admitting records from the Board as business records, and, therefore, as admissible hearsay, because the custodian of the records did not testify they were made contemporaneously by someone with knowledge. We agree.

"The common law definition of hearsay evidence is 'testimony in court . . . of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.'" Campos v. Commonwealth, 67 Va. App. 690, 704 (2017) (quoting Commonwealth v. Swann, 290 Va. 194, 197 (2015)). "A hearsay objection lies against the admission of written statements which were made out of court and are offered for the truth of what they say." Id. at 705 (quoting Arnold v. Wallace, 283 Va. 709, 713 (2012)). "[H]earsay evidence is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule, and . . . the party attempting to

---

[2] Ansell also noted that the records were not treatment records nor related to any physical injury, so they did not meet the medical records exception. HRSSD did not argue that the records were medical records, so we consider here only the business records exception to the hearsay rule.

- 4 -

introduce a hearsay statement has the burden of showing the statement falls within one of the exceptions." Id. (alterations in original) (quoting Godoy v. Commonwealth, 62 Va. App. 113, 119 (2013)).

One exception is for records of a regularly conducted activity, often called the business records exception. Under this exception, a record containing hearsay is nevertheless admissible if the following elements are satisfied:

> (A) the record was made at or near the time of the acts, events, calculations, or conditions by--or from information transmitted by--someone with knowledge;
> (B) the record was made and kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making and keeping the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 2:902(6) or with a statute permitting certification; and
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Va. R. Evid. 2:803(6).

Here, it is undisputed that records HRSSD sought to admit constituted hearsay. Moreover, the records were offered at trial for their truth; HRSSD sought to establish Ansell's mental health condition at the time the children were removed. Accordingly, in order for the pre-admission screening report to be admissible under the business records exception, "the custodian or another qualified witness" had to testify that "all the[] conditions" of Rule 2:803(6) were met. Va. R. Evid. 2:803(6)(D). Here, the custodian testified that she was not able to state that the record was made "by—or from information transmitted by—someone with knowledge"

- 5 -

as required by Rule 2:803(6)(A). HRSSD therefore failed to meet the requirements of business records exception to hearsay.[3]

Nevertheless, HRSSD argues that the presence of an employee's name on the documents along with the notation "face-to-face" contact is sufficient to meet the requirement that the documents be made by someone with actual knowledge of the event. HRSSD suggests that this Court's recent decision in Melick v. Commonwealth, 69 Va. App. 122 (2018), supports its position. In Melick, a pawn shop owner testified that records were created when transactions occurred. Id. at 139. "The testimony regarding the store's procedures made clear that, regardless of which of the [employees] uploaded the collected information to [the computer], the information came from the clerk who conducted the transaction." Id. "By definition, the person who conducts a transaction has knowledge of that transaction."

In contrast, the custodian here did not testify regarding the Board's procedures. She did not testify that the name on the document was the employee who conducted the interview or the person who entered the information. Thus, unlike in Melick, the witness here did not testify that the person who "uploaded the collected information to [the computer]" was someone with knowledge of the collected information. Id. The rule of evidence is clear that the testimony of the custodian or other witness must establish the required elements; the proponent cannot rely on the document to bolster itself. Here, the custodian did not testify as to the knowledge of the person creating the document, and HRSSD did not call any other witness for this purpose. The circuit court therefore erred in admitting the records.

---

[3] We note that the trial court's rationale that Ansell and her attorney had access to the records plays no role in determining whether the records were admissible under this hearsay exception.

B. Harmless Error Analysis

"Code § 8.01-678 requires harmless error review before any judgment is reversed." Hillman v. Commonwealth, 68 Va. App. 585, 601 (2018). "We 'will not reverse a trial court for evidentiary errors that were harmless to the ultimate result.'" Id. (quoting Shifflett v. Commonwealth, 289 Va. 10, 12 (2015)).

Here, our harmless error analysis must focus on whether, without the erroneously admitted evidence, the trial court would have come to the same result. The trial court was considering whether Ansell "without good cause, [had] been unwilling or unable . . . to remedy substantially the conditions which led to or required continuation of the child's foster care placement." See Code § 16.1-283(C)(2). To determine if Ansell had remedied substantially these conditions, the trial court was required to look at evidence created *after* the children were placed in foster care. The erroneously admitted evidence was a pre-admission screening purportedly created on the day the children were placed in foster care and Ansell was involuntarily admitted to the hospital. Although the pre-admission screening report contributed details regarding Ansell's condition at the time the children were removed, it was of minimal value in determining whether Ansell had substantially remedied those conditions. Ansell did not object to admission of the medial records from her hospitalization or to the other places in the record that referenced information in the pre-admission screening. We therefore conclude that the erroneous admission of the pre-admission screening was harmless.

C. Sufficiency

Ansell argues that the evidence was not sufficient to terminate her residual parental rights because HRSSD did not show by clear and convincing evidence that Ansell had not remedied substantially the conditions that led to the children being placed in foster care and that proved termination was in the children's best interests.

- 7 -

"When reviewing a decision to terminate parental rights, we presume the circuit court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Toms v. Hanover Dept. of Soc. Servs., 46 Va. App. 257, 265-66 (2005) (quoting Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266.

The trial court terminated Ansell's residual parental rights pursuant to Code § 16.1-283(C)(2). This code section provides that the

> residual parental rights of a parent . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2). Accordingly, HRSSD had to show both that Ansell had been unable or unwilling to remedy substantially the conditions that required continued foster care placement and that termination of Ansell's rights was in the best interests of her children.

### 1. Remediation of the Conditions

Ansell acknowledges that the conditions she needed to remedy were her illegal drug use and her mental illness, both of which are well documented in the record. The trial court agreed, but found she had been unwilling or unable to do so. The trial court explained,

> Clearly one of the things that Ms. Ansell needed to do in order to attempt to regain the custody of her children was to have both substance abuse and mental health evaluations and to comply with the recommendations of the providers, and on the four corners of the evidence I do find that she has been fighting medication

- 8 -

management, has insisted on using STARS instead of [Board] mental health counseling as recommended as it's been all the way through this situation. It's going to be her way or no way at all . . . . I note also that although the mother was going to the STARS program, she was only partially compliant with the STARS program and the mother doesn't seem to make the connection between how she acts and how it affects the children. The record is filled with instances of her blaming others instead of her own mental health and substance abuse issues, and I note the constant failure to keep appointments [with Dr.] Grayson is illustrative of this.

The trial court's findings were supported by the record. Ansell refused many drug screenings, from which the trial court could infer continued drug usage. Ansell refused many services which could have helped her identify and manage the causes and triggers of her mental illness. Dr. Grayson, a clinical psychologist who had evaluated Ansell, noted that many individuals with a similar diagnosis as Ansell "require consistent attention to manage symptoms . . . and [such a person] needs to actively work indefinitely with her providers at [the Board] to manage the symptoms. If her historical diagnosis is accurate, one would expect periods of adequate functioning interspersed with episodes of illogical thinking and poor emotional control." Here, Ansell was unwilling or unable to cooperate with providers like Dr. Grayson, as demonstrated by Ansell's compromising several testing sessions, cancelling numerous appointments, and being guarded rather than truthful with her answers. Ansell's five-month delay in completing the evaluation with Dr. Grayson and her refusal to take advantage of other counseling services provided by the Board prevented Ansell from substantially managing her mental illness. Ansell's unwillingness or inability to build a network of support for potential episodes of illogical thinking and poor emotional control, as Dr. Grayson cautioned, leave the children in a potentially vulnerable position.

Ansell argues she "addressed" her mental health and drug abuse issues. Code § 16.1-283(C)(2), however, requires more than that. It requires that Ansell "remedy substantially

- 9 -

the conditions." The trial court expressly found, based on its observations of Ansell while she testified, that the mental health conditions that existed at the time the children were placed in foster care still existed at the time of trial. The trial court expressly found that based on the record, Ansell had not substantially remedied her need to successfully manage her mental illness by making use of available mental health services.

## 2. Best interests of the child

After reviewing the reports from the CASA representative, reports from the guardian *ad litem*, and the rest of the record, the trial court found that termination of Ansell's parental rights was in the best interests of the children. The trial court noted that at the time of removal at least one of the children had developmental delays and dental issues which had been tended to in foster care. The trial court found the children were doing well in foster care. Movement toward permanency and safety was in the children's best interests and that meant termination of parental rights to facilitate adoption.

Finding sufficient evidence in the record to support the trial court's findings, we will not disturb the ruling. See Toms, 46 Va. App. at 265.

### CONCLUSION

The trial erred in admitting the hearsay evidence, but the error was harmless. The evidence was sufficient to support the trial court's finding that Ansell had not remedied substantially the conditions that caused the children to be taken into foster care. We therefore affirm.

Affirmed.