COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Malveaux, Fulton and Friedman
Argued at Norfolk, Virginia


ALEXIS ODELIA TORAN

MEMORANDUM OPINION* BY
v.      Record No. 1336-21-1      JUDGE JUNIUS P. FULTON, III
SEPTEMBER 20, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
John W. Brown, Judge

Samantha Offutt Thames, Senior Assistant Public Defender (Virginia
Indigent Defense Commission, on brief), for appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of the City of Chesapeake convicted appellant,

Alexis Odelia Toran, of obstruction of justice and assault and battery of a law enforcement officer.

The trial court sentenced Toran to two years and six months on these convictions, with one year and

twelve months suspended. On appeal, Toran contends that the evidence was insufficient to sustain

her convictions because it failed to show that she had the requisite intent for those crimes. For the

following reasons, we affirm the trial court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication

(2016)). In doing so, we discard any of Toran's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *See id.* at 473.

On May 21, 2019, Officer D. Moorman of the City of Chesapeake Police Department stopped a Mazda sedan driven by Toran because the vehicle's left headlight was out. Upon stopping the vehicle, Officer Moorman noticed that Toran's front seat passenger "appeared to be faking to be asleep" and was not wearing a seatbelt. Toran informed Officer Moorman that the passenger was her brother, Raymale Toran, and spelled his name. Toran further claimed that her brother was "special" and that she "just came from picking him up from [her] mom." Toran also stated that her brother's birthday was in September and called her mother when she could not remember the exact date. Officer K.L. James, who had been standing at the passenger side of the vehicle, overheard Toran's claim that the passenger "was her disabled brother," but did not hear the name she provided to Officer Moorman. The passenger subsequently informed Officer James that his name was Marcus Staggler. Officer Moorman concluded the stop by issuing Toran a summons for defective equipment and an expired inspection sticker.

Upon returning to his vehicle, Officer James discovered that Toran had provided Officer Moorman a different name for the passenger than the one the passenger had provided him. After further investigation, Officer James discovered that the passenger was in fact Johnnie Ebron, who had a felony warrant out for his arrest. Officers James and Moorman subsequently traveled to the residence associated with Toran's vehicle. Officer James found Toran at the residence and explained to her that she had lied regarding her passenger's identity. Toran responded that her passenger "was homeless" and that she "barely kn[ew] him."

Officer James placed Toran under arrest for obstruction of justice. Toran angrily berated Officer James and physically resisted his attempts to walk her to his vehicle. Once there, she

"tensed up" and refused to get inside of the police vehicle. As a result, Officer Moorman had to assist Officer James by grabbing Toran's "shoulders or underneath the arm" and pulling her into the vehicle from the other side. As the officers attempted to place Toran in the vehicle, Toran kicked Officer James multiple times. Officer Moorman observed Toran kick Officer James at least twice "in the arm and chest area." Officer James observed that Toran was "trying to block the door from shutting," but that she "kick[ed] toward [him]" when he tried to hold her legs down. Officer James informed Toran that she would be charged with a felony if she continued to kick him. Notwithstanding this warning, Toran continued to kick at Officer James. Although the testimony was unclear whether Toran struck Officer James after he warned her not to kick him, Officer James testified that during the interaction she struck him twice in his left thigh.

Toran was charged with obstruction of justice and assault and battery of a law enforcement officer. During a bench trial, the Commonwealth introduced testimony from Officers Moorman and James. At the close of the Commonwealth's evidence, Toran moved to strike the evidence, which the trial court denied. Toran testified that she did not tell Officer Moorman the name of her passenger, but rather "told [Officer Moorman] that he could ask [the passenger]." Toran further claimed that Officer James "butted in" by asking her for the passenger's information and that she had "three different questions being asked of her at the same given time." Toran testified that the passenger was someone "that goes to [her] church which is a brother." As to her arrest, Toran testified that she was "not asked to get in[to]" the police vehicle and "was body-slammed inside the [vehicle]."

The Commonwealth introduced video footage of the traffic stop from Officer Moorman's body camera during its cross-examination of Toran. The video shows Toran looking directly at Officer Moorman as she refers to her passenger as her "brother" Raymale Toran and spells his name. The video also shows that Officer James did not speak to Toran before she provided the

incorrect identity of the passenger.[1]  In fact, Toran referred to her "brother," gesturing toward her passenger, before she was ever asked her passenger's identity.  Toran admitted that she previously had been convicted of a crime involving lying, cheating, or stealing.

At the close of all the evidence, Toran renewed her motion to strike all charges.  As to the charge for obstruction of justice, Toran argued that her testimony showed that she was simultaneously asked different questions by Officers James and Moorman and that "caused some confusion with regards [sic] to the responses that she gave."  As to the charge for assault and battery of a law enforcement officer, Toran argued that Officer Moorman's testimony that Toran kicked Officer James "in the arm and chest area" contradicted Officer James' testimony that he was kicked in the thigh area.  After considering the parties' arguments, the trial court convicted Toran of both obstruction of justice and assault and battery of a law enforcement officer.  As to the obstruction of justice charge, the trial court specifically determined that "there's no question of confusion," that Toran "was clearly wrong," and that she was not credible.  The trial court sentenced Toran to two years and six months on these convictions, with one year and twelve months suspended.  This appeal followed.

ANALYSIS

Toran argues that the evidence was insufficient to sustain her convictions for obstruction of justice and assault and battery of a law enforcement officer because it failed to show that she had the requisite intent for those crimes. We conclude that the evidence was sufficient to sustain Toran's conviction for obstruction of justice and that Toran failed to preserve her argument challenging her conviction of assault and battery of a law enforcement officer.

---

[1] The video shows Officer James standing at the passenger side door, which was closed with its window up, when Toran provided the incorrect identity of her passenger.  Moreover, the trial court specifically found that Officer James could not be heard on the body camera footage despite that it had "clearly good audio."

- 4 -

## I. Obstruction of Justice

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 30 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, we will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Kelly*, 41 Va. App. at 257).

Toran argues that the evidence was insufficient to sustain her conviction of obstruction of justice because it failed to show that she "knowingly and willfully obstruct[ed] the officer [sic] in their duties." In doing so, Toran relies on her testimony that she was asked different questions at the same time and her claim that "she was overwhelmed." The trial court, however, specifically determined that there was "no question of confusion" and that Toran was not credible. Indeed, the video recording from Officer Moorman's body camera depicts Toran as she looks at Officer Moorman, refers to her passenger as her "brother," Raymale Toran, and spells his name. The video also shows that Officer James did not speak to Toran before she provided the incorrect identity of her passenger. Finally, the record shows that Toran later claimed that her passenger "was

- 5 -

homeless" and that she "barely kn[ew] him" contrary to her statements to Officer Moorman. As we recently held,

> [o]ur deference . . . is not limited to matters of witness credibility. We owe deference to the trial court's interpretation of all of the evidence, including video evidence that we are able to observe much as the trial court did. Such deference stems not from the trial court being in a superior position to view the video evidence but from the difference in our respective roles. As factfinder, a trial court views video and other evidence to determine what it believes happened; we, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did.

*Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022). Under these circumstances, there was sufficient evidence for the trial court to find that Toran's testimony was not credible and conclude that Toran knowingly and intentionally provided Officer Moorman with the incorrect identity of her passenger.

## II. Assault and Battery

Toran argues that there was "insufficient evidence of intent" to sustain her conviction for assault and battery of a law enforcement officer. She contends that "the facts demonstrate a reasonable hypothesis of innocence that [she] accidentally kicked [Officer James]." Toran further asserts that "[h]er clear intent . . . was to block the [car] door from shutting" and "not to offensively touch the law enforcement officer." Toran challenged the credibility of the witnesses, not her intent, during the trial. Toran concedes that she failed to preserve for appeal her argument that she lacked the requisite intent. Nevertheless, Toran asks this Court to consider her argument under Rule 5A:18's ends of justice exception.

Under Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "'The ends of justice

exception is narrow and is to be used sparingly,' and [it] applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (*en banc*) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220-21 (1997)). "[W]hen an appellant raises a sufficiency of the evidence argument for the first time on appeal, the standard is higher than whether the evidence was insufficient." *Id.* (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage has occurred, not that a miscarriage *might* have occurred." *Id.* (quoting *Redman*, 25 Va. App. at 221). "Therefore, in examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense." *Id.* (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 695 (2011)).

Toran argues that "[t]he record affirmatively shows that the contact with the officer was an accident" and that she was "clearly trying to kick at the police car door." We disagree. Although Officer James testified that Toran was at one point "trying to block the door from shutting," his testimony also shows that Toran generally resisted being placed inside of the police vehicle. Once advised that she would be arrested, Toran became angry and hostile toward Officer James, repeatedly berating him as he arrested her and attempted to place her in the vehicle. Indeed, Officer James explained that Toran specifically kicked towards him when he tried to hold her legs down. Moreover, Toran's resistance necessitated that Officer Moorman grab Toran and pull her into the vehicle from the other side. We have consistently held that a "fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." *Robertson v. Commonwealth*, 31 Va. App. 814, 820 (2000). Given the relative positioning of both Toran and Officer James, combined with the hostile and forceful

- 7 -

manner of Toran's kicking, there was certainly sufficient evidence in the record for a reasonable factfinder to conclude that contact between Toran's foot and Officer James's body was natural and probable and thus an intended consequence of her actions. Under these circumstances, the record fails to affirmatively prove that Toran was merely trying to kick the police vehicle door as opposed to Officer James. Accordingly, Rule 5A:18's ends of justice exception does not apply and we do not address the substance of Toran's argument.

## CONCLUSION

The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Toran was guilty of obstruction of justice. Furthermore, Toran failed to preserve her argument challenging her conviction of assault and battery of a law enforcement officer. For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed*.