# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Causey and Senior Judge Clements
Argued at Richmond, Virginia


PEARLY E. WALTERS

MEMORANDUM OPINION[*] BY
v.         Record No. 0038-22-2              JUDGE JEAN HARRISON CLEMENTS
AUGUST 23, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Lynn S. Brice, Judge

(M.G. Henkle; Henkle Law Firm, on brief), for appellant.  Appellant
submitting on brief.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The Circuit Court of Chesterfield County ("trial court") revoked seven and re-suspended

five years of Pearly E. Walter's previously suspended sentences for obtaining money by false

pretenses and uttering a worthless check.  On appeal, Walters contends that the trial court abused

its discretion by imposing two years of active incarceration and ruling that it lacked authority to

instruct the Sheriff to allow him to serve his sentence in the Henrico County Jail.  Walters also

argues that the trial court erred in admitting or considering certain evidence at sentencing.  For

the following reasons, we affirm the trial court's judgment.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

In July 2011, the trial court convicted Walters of felony obtaining money by false pretenses and uttering a worthless check. The court sentenced him to a total of eight years' incarceration with all but one year suspended conditioned upon good behavior.

On May 22, 2020, the Circuit Court of Lancaster County convicted Walters of felony credit card theft. The Lancaster County Commonwealth's Attorney advised the Commonwealth's Attorney for Chesterfield County of the new conviction by letter, including the former's opinion that Walters "is a career thief with 19 convictions of fraud and larceny in the last twenty years" and in Lancaster County, Walters "pretended to be a minister helping an intellectually challenged man while using the man's debit card to make over $6,000.00 in fraudulent transactions." On June 29, 2020, the trial court issued a capias for Walters' arrest.

At a revocation hearing on September 1, 2021, Walters conceded the violation, and the Commonwealth introduced a certified copy of the conviction order from Lancaster County. Accordingly, the trial court found Walters "in violation" of the terms and conditions of his previously suspended sentences. The Commonwealth sought to introduce a copy of the May 29 letter from the Lancaster County Commonwealth's Attorney, "solely" for the court to "have some flavor" of the facts underlying the new conviction. Defense counsel objected, arguing that "there's a lot of editorial comments stated in the letter, and I don't think it's appropriate for the [c]ourt to consider." He clarified, "I don't object to the [c]ourt considering the fact that [Walters] got convicted of new offenses in Lancaster," but objected that, "normally evidence comes in from a

- 2 -

Probation Officer" whereas "[t]his is coming in from the elected Commonwealth Attorney in another jurisdiction who is upset that [Walters] didn't get enough time in that jurisdiction." In response, the court stated its confidence that it could "parcel out what's relevant to this hearing." The Commonwealth argued that the trial court had "the right to know some of the facts underlying the new conviction" and asked it to consider only "that portion of the letter . . . , not the editorialization." The court overruled Walters' objection and found that "the sum of this letter tells me there is a conviction," concluding that the underlying facts were "relevant for sentencing whether or not [he was] in violation."

Walters introduced several documents in mitigation. Records from the Virginia Department of Corrections reflected that he had an outstanding active sentence in Henrico County of four years and twelve months. In an order dated September 22, 2020, the Circuit Court of Henrico County found Walters eligible to serve that sentence through that jurisdiction's "Work Release program" and did "not object" to his participation in the "ORBIT program" with the Henrico County Sheriff's approval.[1] A letter from Henrico Area Mental Health & Developmental Services indicated that Walters recently "completed Phase III of Henrico County Jail's R.I.S.E. (Recovery In a Secure Environment) program," which Walters explained was "a prerequisite" to participate in the ORBIT program. Finally, defense counsel introduced a document purporting to be the "Articles of Organization of Harborview Cleaners LLC" and proffered that Walters intended to "go back in the dry cleaning business" upon release from custody.

During argument, defense counsel acknowledged Walters' criminal record and argued that the court should "disregard a great deal" of the "editorialization" contained in the letter from the Lancaster County Commonwealth's Attorney. The trial court interjected, "Yes. I think that's what I do every day." Defense counsel asked the trial court "not to handicap [Walters'] ability to pursue

---

[1] The record does not reflect any details regarding the nature of the ORBIT program.

the plan that he already had in place." He asked the trial court to "consider running [any active sentence] concurrent" with Walters' existing sentence or "allowing him to serve that time in the Henrico County Jail System." Counsel concluded, "I don't think it's necessary for the [c]ourt to put [Walters] on supervised probation upon release" because he "wasn't on supervised probation at the time" of the violation.

The Commonwealth noted Walters' significant "criminal history," including "20 felony convictions" comprised "almost entirely of [offenses of] a larceny or a fraudulent-type nature." Given his "criminal history and the nature of the new charges," the Commonwealth argued that "a substantial period of incarceration should be imposed."

At allocution, Walters stated that "this [was his] first time here after nine years to come back to court for anything." He accepted responsibility for his misconduct and said that he had since "learned a lot" and obtained "a lot of tools" while incarcerated. Walters described his history of incarceration and reform, stating that when his life "became unmanageable," he sought counseling services through Northern Neck Middle Peninsula Community Service Board "to work on [his] behavior." He acknowledged that there was a time when he was "out of control" but claimed, "that's not in [his] life anymore." Asserting that incarceration is "not just [about] punishment," Walters maintained that he had obtained "more tools" and resolved "to do better" each time he had been imprisoned. This time, he "recognize[d]" his wrong and was committed to "stay[ing] in the program" to avoid recidivism.

Before imposing sentence, the trial court found that Walters had "a 20-year history of stealing and fraud and forgery and perjury and probation violation[s], and 20 felony convictions for that type of behavior and countless misdemeanors, including this charge." The trial court found Walters' pattern of committing the same offenses to be "very egregious." Accordingly, the trial

court revoked seven years of Walters' previously suspended sentences, re-suspended five years, and placed him on supervised probation.

Immediately following the trial court's imposition of sentence, defense counsel asked the court to "consider authorizing" that Walters "serve the time in Henrico if they agree to accept him." The trial court denied the request, stating, "No, sir. That's up to the Sheriff. I don't tell the Sheriff where to put his people." Defense counsel responded that he was "not suggesting" that the trial court "tell [the Sheriff] where to put [Walters]," but was requesting that the "[c]ourt authorize that if the two Sheriffs agree." Again, the court demurred, stating, "No. He's with the Sheriff." Walters appeals.

## ANALYSIS

### A. The trial court did not abuse its sentencing discretion.

After suspending a sentence, a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). Walters does not contend that the trial court did not have sufficient cause to revoke his suspended sentences. Rather, he asserts that the trial court abused its discretion by imposing two years of active incarceration. He maintains that his sentence was not "proportional" to his violations and "arbitrary and unreasonable" given "the punishment and rehabilitative programs [he] had already completed in other jurisdictions." Further, Walters argues that the trial court erred in "ruling that it lacked the authority to authorize the Sheriff to allow [him] to serve his time in Henrico." We disagree.

Under the revocation statute in effect when Walters' revocation proceeding began, once the trial court found that he had violated the terms of the suspension, it was obligated to revoke the

suspended sentences and they were in "full force and effect." Code § 19.2-306(C)(ii).[2] The trial court was permitted—but not required—to re-suspend all or part of the sentence. *Id.*; *Alsberry v. Commonwealth*, 39 Va. App. 314, 320 (2002). In making that determination, it was within the trial court's purview to weigh any mitigating evidence Walters presented. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000).

Here, the evidence established that Walters had an extensive criminal history replete with felony theft offenses and "countless misdemeanors." Despite receiving only one year of active incarceration for his previous convictions for obtaining money by false pretenses and uttering a worthless check in 2011, Walters incurred yet another criminal conviction by "doing the same thing that [he was] convicted for before."

"The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740 (2007). Walters' pattern of criminal behavior—despite significant court intervention—supports the finding that he was not amenable to rehabilitation. "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)). Walters abused the

---

[2] Although Code § 19.2-306(C) was amended effective July 1, 2021, Walters does not argue that the statutory amendment applied in his case and this Court recently held that it did not apply when, as here, the probation violations occurred and the revocation proceeding began before the effective date of the amendment. *See Green v. Commonwealth*, 75 Va. App. 69, 86 (2022). Moreover, even under the new statutory framework the trial court has discretion to impose the balance of a previously suspended sentence when a probationer commits a new offense during the suspension period. *See* 2021 Va. Acts Sp. Sess. I, ch. 538; Code § 19.2-306.1(B).

"grace" that had been extended to him by continuing to engage in fraudulent criminal behavior, perpetuating his already decades-long criminal history.

Furthermore, we find no merit in Walters' contention that the sentence imposed was disproportionate to the nature of the violation. This Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 654 (2011). We noted in *Cole* that the Supreme Court of the United States "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Id.* at 653 (quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (*per curiam*)). *Cf. Vasquez v. Commonwealth*, 291 Va. 232, 243 (2016) (rejecting Eighth Amendment challenge to 133-year active sentence because the sentence was imposed for "eighteen separate crimes"). Thus, we decline to conduct a proportionality review in this case. *See id.*

Finally, Walters' contention that the trial court erred in "ruling that it lacked the authority to authorize the Sheriff to allow [him] to serve his time in Henrico," is meritless and without evidentiary support. Contrary to Walters' assertion on brief, the trial court never ruled that it lacked any such authority. Rather, the court merely denied Walters' request to order the Sheriff to house him at Henrico County Jail while he served his sentence, deferring to the Sheriff's judgment concerning Walters' confinement.

In sum, the record supports the trial court's judgment. "For probation to have a deterrent effect on recidivism, real consequences must follow a probationer's willful violation of the conditions of probation." *Price*, 51 Va. App. at 449. Upon review of the record in this case, we conclude that the sentence the trial court imposed represents such real consequences and was a proper exercise of judicial discretion. *See Brittle v. Commonwealth*, 54 Va. App. 505, 520 (2009)

(affirming the court's imposition of a five-year sentence with three years suspended for third offense larceny because the sentence was "not excessive on its face").

B. The trial court did not abuse its discretion in admitting the letter from the Lancaster County Commonwealth's Attorney.

Walters also argues that the trial court erred in admitting the "inherently inflammatory and prejudicial letter" from the Lancaster County Commonwealth's Attorney at the sentencing hearing. Walters contends that "much of [the letter] consisted of irrelevant information," which was "prejudicial and offering an opinion on the ultimate issue" of Walters' "propensity to commit a certain type of crime and the need for punishment." We disagree.

"[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Id.* (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)). "The abuse-of-discretion standard [also] includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* (alteration in original).

"Evidence of a new criminal offense may be relevant and admissible in a probation revocation hearing," for example when a new criminal conviction forms the basis of the violation. *Downey v. Commonwealth*, 59 Va. App. 13, 21 (2011). Moreover, a defendant's "entire criminal record" is relevant and admissible at sentencing in a revocation hearing to determine "how much of the suspension to revoke." *Pearson v. Commonwealth*, 37 Va. App. 583, 590 (2002). Here, the sole basis for revoking Walters' suspended sentence was the new criminal conviction. The challenged letter contained a summary of the facts underlying the new

conviction. Accordingly, the letter was relevant and admissible to inform the trial court's decision in fashioning an appropriate sentence. *See Downey*, 59 Va. App. at 21; *Pearson*, 37 Va. App. at 590.

Further, the record demonstrates that the trial court admitted the letter solely to consider the facts underlying the new conviction, not the Lancaster County Commonwealth's Attorney's "editorialization." In a bench trial, "the trial judge is presumed to disregard prejudicial or inadmissible evidence, and this presumption will control in the absence of clear evidence to the contrary." *Pierce v. Commonwealth*, 50 Va. App. 609, 616 (2007) (internal quotation marks omitted). To be sure, "a trial judge sitting as a fact finder in a bench trial, is uniquely suited by training, experience, and judicial discipline to disregard potentially prejudicial comments." *Adjei v. Commonwealth*, 63 Va. App. 727, 739 (2014) (internal quotation marks omitted). Consequently, "we presume that a trial judge has separate[d], during the mental process of adjudication, the admissible from the inadmissible, even though [s]he has heard both." *Id.* "Thus, in the absence of affirmative evidence to the contrary, we are bound by the presumption that the circuit court judge, acting as the finder of fact in this case, properly and separately considered only the evidence relevant to the charges in each case." *Cousett v. Commonwealth*, 71 Va. App. 49, 63 (2019).

Here, the trial court explicitly stated that it could "parcel out" the information that was "relevant to" the revocation proceeding. Furthermore, the court granted Walters' request to disregard the letter's "editorializations," stating it routinely disregarded inadmissible information. Thus, no "affirmative evidence" undermines the presumption that the trial court "disregard[ed]" the allegedly "prejudicial or inadmissible" portions of the letter. *Pierce*, 50 Va. App. at 616. Accordingly, "we are bound by the presumption that the circuit court judge, acting as the finder of fact in this case, properly and separately considered only the evidence

relevant" to the case. *Cousett*, 71 Va. App. at 63. We find no abuse of the trial court's discretion.

## C. Waiver

Finally, Walters argues that the trial court erred in considering his criminal record at sentencing because it was "never offered or admitted into evidence." He acknowledges that he did not preserve this argument but asks that we consider it under the ends of justice exception to Rule 5A:18.[3]

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 219 (2004) (*en banc*)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (*en banc*) (quoting *Brittle*, 54 Va. App. at 514).

"In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). Furthermore, to demonstrate that a miscarriage of justice has occurred, "[i]t is never enough for the defendant to merely assert a winning argument on the merits—for if that were enough[,] procedural default 'would never apply, except when it does not matter.'"

---

[3] "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18.

*Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).

Walters has failed to demonstrate that a miscarriage of justice has occurred. During the guilt phase of the revocation hearing, the trial court admitted the letter from the Lancaster County Commonwealth's Attorney containing a summary of Walters' criminal record. Walters did not object to the court considering the letter's recital of his criminal history, but only its "editorializations." Moreover, during argument at sentencing, defense counsel conceded, Walters "has the record that he has, Judge, I can't argue with that." In rebuttal, and without objection, the Commonwealth proffered Walters' criminal history. Given the above arguments and proffers, which include Walters' own reference to his criminal record, we cannot say that a manifest injustice has occurred. Walters' criminal history plainly was relevant and admissible. Thus, Rule 5A:18 bars our consideration of Walters' argument.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*