COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Callins, White and Bernhard
Argued by videoconference

QUANTEZ DAVAUN RODGERS

                                                MEMORANDUM OPINION* BY
v.        Record No. 0600-24-1            JUDGE DOMINIQUE A. CALLINS
                                                OCTOBER 7, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Tanya Bullock, Judge

Eric Weathers, Assistant Public Defender (Kelsey Bulger, Deputy
Appellate Counsel; Virginia Indigent Defense Commission, on
briefs), for appellant.

Andrew T. Hull, Assistant Attorney General (Jason S. Miyares,
Attorney General; Mary Catherine Talbott, Assistant Attorney
General, on brief), for appellee.


Following a jury trial, Quantez Davaun Rodgers was convicted of possession of a firearm

by a violent felon under Code § 18.2-308.2(A).  On appeal, Rodgers challenges the trial court's

denial of his motion to strike, arguing that the evidence was insufficient to prove that he was the

person who possessed a handgun found in a pond by the police after executing an arrest warrant

on him.  Because the record contains sufficient circumstantial evidence to support the finding

that Rodgers threw the handgun into the pond, we affirm the trial court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

On May 18, 2023, officers from the Virginia Beach and Portsmouth police departments cooperated in carrying out an arrest warrant on Rodgers at an apartment complex in Virginia Beach. Detectives Raymond Morton and Jonathan Monteith parked their police vehicle near a breezeway of the apartment complex and waited to execute the arrest warrant on Rodgers.

After observing Rodgers approaching his girlfriend's vehicle, the detectives exited their vehicle to apprehend Rodgers. Rodgers immediately fled towards the breezeway. As Rodgers fled, Detective Monteith observed Rodgers reaching toward the front of his waistline. Detective Morton chased Rodgers up the breezeway stairs, briefly losing sight of him. Meanwhile, Detective Monteith remained downstairs and observed a firearm hurtle in mid-air from the upstairs breezeway location where Detective Morton chased Rodgers before landing into a nearby pond. Neither Detective Monteith nor Detective Morton saw who threw the firearm. Just before apprehending Rodgers, Detective Morton observed Rodgers exit an apartment located upstairs, off the breezeway. After exiting the apartment with his hands up, Rodgers dropped his cell phone and got on the ground.[2] Detective Morton's and Monteith's body cameras were turned on during the chase and did not depict anyone else but Rodgers in the vicinity of the breezeway or stairwell.

Upon searching Rodgers's person, officers found a black extended magazine in Rodgers's pocket containing SIG .357 caliber ammunition. The officers also recovered from the nearby pond a black holster containing a .357 caliber Glock pistol manufactured by SIG Sauer,

---

[1] "On appeal, we review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Yerling v. Commonwealth*, 71 Va. App. 527, 530 (2020) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)).

[2] Officers subsequently searched the apartment and did not find any contraband, firearms, or other people.

loaded with a magazine containing SIG .357 caliber ammunition. A firearms expert conducted test fires using the recovered handgun and testified at trial that the handgun was in mechanical operating condition. The firearms expert also testified that there are approximately six Glock models that fire SIG .357 caliber bullets. Detective Blake Fritzman testified that the police did not test the recovered handgun for DNA or fingerprints because it had gotten wet from being thrown into the pond, rendering fingerprints and DNA no longer viable.

At the close of the Commonwealth's evidence at trial, Rodgers moved to strike, arguing that the evidence was insufficient for the jury to find that he was the person who possessed the handgun found in the pond. The trial court denied the motion.

In his defense, Rodgers testified that he drove to the apartment complex to drop off his vehicle for his cousin Jocorey. Rodgers testified that, after arriving, he found a gun magazine underneath the passenger seat of his vehicle and put it in his pocket to bring back to his cousin Laquan in Portsmouth. Rodgers testified that Jocorey's neighbor, Scott, who lives in the apartment across from Jocorey, was "looking out for" Jocorey's apartment while Jocorey was gone because it was unlocked. Rodgers waited for Jocorey in Jocorey's apartment and eventually called his girlfriend to pick him up. Rodgers testified that, after the detectives confronted him, he ran because he "panicked thinking about the magazine" in his pocket and yelled, "Cops. Cops," while running up the breezeway stairs.[3] Rodgers testified that Scott was standing outside his own apartment at this time and that Rodgers saw Scott reach into his pants and throw a black object before retreating into his apartment. During cross-examination, the Commonwealth impeached Rodgers's credibility with his seven prior felony convictions.

---

[3] The police bodycam footage presented at trial does not indicate that Rodgers yelled, "Cops. Cops."

At the close of Rodgers's evidence, Rodgers renewed his motion to strike, arguing that there was no evidence that any witness saw who threw the handgun into the pond. Rodgers noted that the ammunition found on his person could have been used by six different models of Glock handguns and that there was no scientific data linking Rodgers to the recovered handgun. The trial court denied the motion.

The jury ultimately found Rodgers guilty of possession of a firearm by a violent felon under Code § 18.2-308.2(A) and imposed the mandatory minimum sentence of five years of active incarceration. The trial court entered judgment in accordance with the jury verdict and sentence. This appeal followed.

ANALYSIS

Rodgers argues that the evidence was insufficient to support his conviction for possession of a firearm by a violent felon under Code § 18.2-308.2(A) because the evidence failed to prove that he was the person who possessed and threw the handgun into the pond.[4] Rodgers emphasizes that no witnesses directly observed him throw the handgun into the pond and notes the lack of DNA or fingerprint evidence connecting him to the handgun. Rodgers asserts that the evidence failed to exclude his reasonable hypothesis of innocence that Scott was the person who threw the handgun into the pond.

In reviewing a challenge to the sufficiency of the evidence to support a conviction, "we will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). "[T]he relevant question is whether,

---

[4] Code § 18.2-308.2(A) provides that "[i]t shall be unlawful for . . . any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm." Rodgers and the Commonwealth stipulated at trial that Rodgers is a previously convicted violent felon.

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998).

"[T]he Commonwealth is not required to carry its burden of proof by direct evidence." *Stamper v. Commonwealth*, 220 Va. 260, 272 (1979). "Indeed, in some cases circumstantial evidence may be the only type of evidence which can possibly be produced." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting *Stamper*, 220 Va. at 272.). "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Id.* (alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). The reasonable-hypothesis principle, however, is "simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). Additionally, "the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the

- 5 -

defendant." *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004) (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). Ultimately, "[w]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Pijor*, 294 Va. at 512-13 (second alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

In this case, a rational trier of fact could have considered all the circumstantial evidence and concluded that Rodgers was the person who possessed and threw the handgun into the pond. Detective Monteith testified that as Rodgers fled toward the breezeway stairs, he observed Rodgers reaching toward the front of his waistline. Moments later, Detective Monteith saw a firearm in mid-air landing into the pond and coming from the upstairs direction where Detective Morton apprehended Rodgers. Body camera footage from Detectives Morton and Monteith confirmed that there were no other individuals in the vicinity of the breezeway or stairwell during this time. The physical evidence also offered a strong connection between Rodgers and the recovered handgun. The handgun retrieved from the pond was a .357 caliber Glock pistol manufactured by SIG Sauer, and it was loaded with SIG .357 caliber ammunition. During the search of Rodgers incident to arrest, officers found a magazine in his pocket containing SIG .357 caliber ammunition—the same type of ammunition used by the recovered handgun. Considering the timing, trajectory, and location of the recovered handgun, as well as the match in caliber and brand between the handgun and the ammunition found on Rodgers's person, a rational factfinder could have concluded that Rodgers was the person who possessed the handgun and threw it into the pond.

In addition to the strength of the Commonwealth's circumstantial evidence, the jury could also have reasonably rejected Rodgers's hypothesis of innocence that a third party, Scott, threw the firearm into the pond. As noted above, no other individuals but Rodgers were visible

in the vicinity of the breezeway or stairwell during the chase. Body camera footage depicting the chase also demonstrated that only a few seconds elapsed between the moment Rodgers began running from the detectives and when he was apprehended. Given this short time window, the jury could have found it implausible that Scott would have been able to observe Rodgers running up the stairs, retrieve a firearm, throw it into the pond, and reenter his apartment—all without being seen. Moreover, no evidence was presented at trial establishing that Scott owned the recovered handgun or that he would have had a motive to get rid of the handgun in the presence of the police. Rodgers, by contrast, was a previously convicted violent felon and therefore had a motive to get rid of the handgun before being apprehended by the police. Additionally, the jury could have found as incredible Rodgers's testimony that he alerted Scott to the presence of the police by yelling, "Cops. Cops," as none of the body camera footage of the chase reflects that Rodgers yelled this. The jury was also entitled to consider Rodgers's seven prior felony convictions as affecting the overall credibility of his testimony.

In summary, we hold that the evidence sufficiently established that Rodgers possessed and threw the handgun into the pond. The evidence was therefore sufficient to sustain Rodgers's conviction for possession of a firearm by a violent felon under Code § 18.2-308.2(A). Accordingly, the trial court did not err in denying Rodgers's motion to strike.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*