UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Chaney
Argued at Norfolk, Virginia


DACQUEZ KESHAWN WILSON

MEMORANDUM OPINION[*] BY
v.        Record No. 0886-22-1        JUDGE GLEN A. HUFF
JULY 18, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF YORK COUNTY
Richard H. Rizk, Judge

(Charles E. Haden, on brief), for appellant. Appellant submitting
on brief.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Under a written plea agreement, the York County Circuit Court (the "trial court") convicted

Dacquez Keshawn Wilson ("appellant") of attempted malicious wounding, possession a firearm on

school property, shooting on school property, and reckless handling of a firearm.[1] The trial court

sentenced appellant to a total of 21 years and 12 months' incarceration with 16 years suspended.

On appeal, appellant challenges the voluntariness of his guilty pleas and argues that his sentence

represented an abuse of the trial court's sentencing discretion.[2] For the following reasons, this

Court affirms the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Consistent with the written plea agreement, the Commonwealth moved to amend a charge
for use of a firearm in the commission of a felony to misdemeanor reckless handling of a firearm in
exchange for Wilson's pleas.

[2] The Honorable Holly B. Smith accepted Wilson's guilty pleas, and the Honorable
Richard H. Rizk imposed appellant's sentence after conducting a sentencing hearing.

BACKGROUND

On appeal, this Court recites the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires "discard[ing] the evidence of the accused in conflict with that of the Commonwealth, and regard[ing] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Before accepting appellant's guilty pleas, the trial court conducted a thorough colloquy with appellant to ensure his pleas were given freely and voluntarily. During the colloquy, appellant confirmed that he had discussed the charges and their elements with his attorney, including what the Commonwealth would have to prove before he could be convicted of each offense. After that discussion, appellant decided to plead guilty because he was "in fact guilty." Appellant affirmed his understanding that by pleading guilty he waived several constitutional rights, including his rights to a jury trial, to remain silent, and to confront the witnesses against him.

The trial court reviewed the plea agreement with appellant, which contained no agreed sentence. Appellant said he understood that he could be sentenced to the maximum statutory period of incarceration for each offense and that the trial court was not bound by the discretionary sentencing guidelines. He confirmed that he had signed the guilty plea questionnaire form after reviewing it with his attorney and that he was "entirely satisfied" with his attorney's services. By signing that form, appellant also acknowledged he could be sentenced to a maximum of 25 years and 12 months' incarceration. He declined an opportunity to ask the trial court any questions.

The Commonwealth proffered that at 4:30 p.m. on December 11, 2020, appellant was at a basketball court at a York County middle school. Appellant produced a firearm from his waistband as he walked behind the victim, Starr Jones, and began "shooting at him." After Jones

fled, appellant got in a minivan driven by his companion, Kevion Urqhart. As the minivan passed the fleeing Jones, a "passenger" shot at Jones through the van's open side door as the van sped away. Investigators found nine cartridge cases at the scene. In a subsequent interview with police, appellant admitted that he had shot at Jones. Appellant agreed with the Commonwealth's proffered evidence and clarified that he was not identified as the minivan "passenger" who shot Jones.

The trial court accepted appellant's pleas, continued the matter for sentencing, and ordered a presentence investigation report. The presentence report documented that appellant was adjudicated delinquent at age 13 for "threat[ening] to bomb" a school, and he was again adjudicated delinquent at age 15 for disorderly conduct. In addition, after committing the present offenses, appellant was convicted in Virginia Beach of possessing a firearm on school property and possessing a sawed-off firearm, as well as two counts of carrying a loaded firearm in a prohibited public area.

At the sentencing hearing, appellant's mother, Lakesha Wilson, testified that appellant was diagnosed with ADHD while in school and had suffered some "traumatic events" related to his father's criminal history. Nevertheless, appellant "was doing pretty good" after completing supervised probation related to his juvenile offenses. But there was a lot of "gang activity" where Lakesha and appellant lived in Norfolk, and appellant began "hanging around" the wrong people. Lakesha had noticed "a change" in appellant since his incarceration; he "want[ed] to do the right thing" and was interested in relocating to Texas with Lakesha. Lakesha said she would "always be supportive of" appellant, who had been living with her when he committed the instant offenses.

The Commonwealth asked the trial court to sentence appellant above the high end of the discretionary sentencing guidelines.[3]  The Commonwealth argued that appellant had retrieved a gun and shot at Jones nine times at one of the only basketball courts open to the public during the COVID-19 pandemic.  Appellant's actions "put the community at risk," including any children who may have been on the school property, as "one stray bullet" could have resulted in a death. The Commonwealth emphasized appellant's juvenile adjudication for threatening to bomb a school and suggested the court should impose a sentence that prevented him from "escalat[ing] this type of behavior."

Appellant asked the trial court to sentence him to no active incarceration.  He argued that he had accepted responsibility for his offenses by admitting his involvement to police, waiving his preliminary hearing, and pleading guilty.  Appellant further suggested that his guidelines were high because he already had been convicted of the charges arising from his conduct in Virginia Beach, even though those offenses occurred after the instant offenses.  Appellant stressed that with Lakesha's help, he had a "bright path ahead of him" in Texas.  He asserted that probation would be beneficial and that he could be rehabilitated.

The trial court sentenced appellant to a total of five years and twelve months of active incarceration.  It found that the discretionary sentencing guidelines recommendation was not sufficient for appellant's "outrageous" conduct.  The court found that it was "fortunate" nobody had died given appellant's decision to fire multiple shots at Jones on a crowded basketball court. It concluded that appellant's actions were "intolerable" and that he "need[ed] to change how [he] process[ed] information" so that he could "be[come] a productive member of society."  This appeal followed.

---

[3] The discretionary sentencing guidelines recommended a sentencing range between one year and five months' incarceration and three years and eleven months' incarceration, with a midpoint of two years and eight months.

- 4 -

ANALYSIS

I. Guilty Pleas

Appellant argues the trial court erred in accepting his guilty pleas because he did not enter them freely and voluntarily. He argues that "the record failed to establish" that he "was given notice of the elements of the offense[s]." He also asserts that "the record was devoid of any questions concerning [his] understanding of the terms of the plea agreement." Finally, he contends that the trial court asked none of the questions pertaining to plea agreements as recommended in Rule 3A:8(C) and "Form 6 of the Appendix . . . for Part 3A" of the Rules of the Supreme Court of Virginia. Appellant, therefore, insists that the trial court's failure to ask those questions demonstrated that he did not understand the consequences of his guilty pleas. Although appellant acknowledges that he did not ever move to withdraw his guilty pleas below or otherwise preserve his current argument for appellate review, he nevertheless asks that this Court to address it under the "good cause" and "ends of justice" exceptions to Rule 5A:18.[4]

"'Good cause' relates to the reason why an objection was not stated at the time of the ruling." *Pope v. Commonwealth*, 60 Va. App. 486, 508 (2012) (quoting *Campbell v. Commonwealth*, 14 Va. App. 988, 996 (1992) (en banc)). "The Court may only invoke the 'good cause' exception where an appellant did not have the *opportunity* to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (emphasis added) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)).

The trial court accepted appellant's guilty pleas on January 20, 2022, and entered final judgment on June 13, 2022. Thus, appellant had over five months to move to withdraw his

---

[4] "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18.

- 5 -

guilty pleas but failed to do so. *See* Code § 19.2-296 (providing that, "to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea"). Nothing in the record suggests that anything prevented appellant from filing such a motion. Accordingly, the good cause exception does not apply because there was ample opportunity for appellant to alert the trial court of the relief he sought. Moreover, appellant had valid strategic reasons for not doing so considering the charges the Commonwealth amended as a result of appellant's agreement to plead guilty, which allowed him to avoid a mandatory minimum sentence.

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply that exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009) (en banc)).

"In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." *Melick*, 69 Va. App. at 146 (emphasis omitted) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). Furthermore, to demonstrate that a miscarriage of justice has occurred, "[i]t is never enough for the defendant to merely assert a winning argument on the merits—for if that were enough[,] procedural default 'would never apply, except when it does not matter.'" *Winslow v.*

*Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).

Because a defendant who enters a guilty plea waives several fundamental trial rights, his "plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Thus, to withstand scrutiny on appeal, the record must contain "an affirmative showing that [the guilty plea] was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

The record belies appellant's assertion that he did not receive "notice of the elements of the offenses." During the trial court's thorough plea colloquy, appellant averred that he had discussed the charges and their elements with his attorney, including what the Commonwealth must prove to convict him of each offense. Further, he confirmed that he understood the penalties each offense carried and that the trial court was not bound by the discretionary sentencing guidelines. Appellant also acknowledged that he was waiving several important trial rights, including his rights to a jury trial, silence, and confrontation. This record thus contains "an affirmative showing" that appellant's guilty pleas were "intelligent and voluntary." *Boykin*, 395 U.S. at 242.

Moreover, appellant cites no authority demonstrating that the trial court was required to review each of the specific elements of the offenses for his guilty pleas to be valid. "A circuit court shall not accept a plea of guilty . . . without first determining that the plea is made . . . with an understanding of *the nature* of the charge and the consequences of the plea." Rule 3A:8(b)(1) (emphasis added); *see also* Rule 7C:6; *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (holding that a defendant must receive "real notice of the true *nature* of the charge against him" for a plea to be voluntary (emphasis added) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941))). Here,

appellant affirmatively represented that he had discussed the charges and their elements with his attorney and understood their respective penalties, including the trial rights he was waiving. After affirming that he was satisfied with his attorney's services, appellant acknowledged that he had decided to plead guilty because he was "in fact guilty." Thus, he was aware of the nature of the charges and the consequences of his pleas.

Finally, appellant argues that his guilty pleas were not knowing and voluntary because the trial court did not ask any of the questions pertaining to plea agreements as recommended in Rule 3A:8(C) and "Form 6 of the Appendix . . . for Part 3A" of the Rules. This argument lacks merit. Rule 3A:8(b)(1) "restate[s]" *Boykin*'s due process requirement that "before a trial court may accept a . . . guilty plea there must be an affirmative showing that the plea was intelligently and voluntarily made." *James v. Commonwealth*, 18 Va. App. 746, 750 (1994). Form 6 of the appendix to Part 3A of the Rules, entitled "Waiver of Rights Form," outlines a "suggested procedure" for compliance with Rule 3A:8(b)(1). *Id.* at 750 n.1. A trial court, however, is not required to follow that exact procedure or ask each of the questions on that form. *Id.* Rather, Rule 3A:8(b)(1) "simply requires that prior to accepting a defendant's plea, the trial court must determine if the defendant is aware of his constitutional rights, the nature of the charges against him, and whether the plea is intelligently and voluntarily made, all of which must appear on the record." *Zigta v. Commonwealth*, 38 Va. App. 149, 157 (2002) (citing *Sisk v. Commonwealth*, 3 Va. App. 459, 463 (1986)).

During the plea colloquy, the trial court reviewed the plea agreement with appellant, which required the Commonwealth to "amend" the charge of use of a firearm in the commission of a felony to reckless handling of a firearm in exchange for his pleas. Appellant confirmed that there was no agreed disposition for the offenses under the plea agreement and that both the trial court and his attorney had reviewed with him the maximum sentence that could be imposed for

each offense. The record shows that appellant had a thorough understanding of not only the consequences of his pleas, but also the risks of a trial on a charge of use of a firearm in the commission of a felony. *See* Code § 18.2-53.1 (providing that a first offense for use of a firearm in the commission of a felony requires three years of mandatory minimum incarceration). After weighing his options, appellant accepted the plea agreement.

Accordingly, this Court concludes that the record contains an affirmative showing that appellant's guilty pleas were entered knowingly, voluntarily, and intelligently. *Boykin*, 395 U.S. at 242. Thus, appellant has not met his burden of establishing a manifest injustice to warrant review under the "ends of justice" exception to Rule 5A:18. Consequently, this Court holds that appellant's challenge to the validity of his guilty pleas is procedurally barred.

## II. Sentence

Appellant next argues that the trial court abused its discretion by imposing a "disproportionate" sentence exceeding the sentencing guidelines. He maintains that the trial court did not give sufficient weight to the mitigating circumstances, including his acceptance of responsibility by pleading guilty without any agreement regarding sentence. He emphasizes his mother's testimony that, although he had suffered trauma as a child, his attitude had changed since his incarceration and he wanted to relocate with her to Texas. Appellant argues that he could be rehabilitated and maintains that the trial court abused its discretion by resorting to an "unduly harsh" and "non-constructive" term of imprisonment.

"The sentencing guidelines are advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). Consequently, a judge's failure to follow the sentencing guidelines "shall not be reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F). Additionally, this Court declines to engage in a proportionality review in cases that do not involve life sentences without

the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 654 (2011). "It lies within the province of the legislature to define and classify crimes and to determine the punishments for those crimes." *DePriest v. Commonwealth*, 33 Va. App. 754, 764 (2000).

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Here, appellant's sentences were within the sentencing ranges set by the legislature. *See* Code §§ 18.2-10, 18.2-26, 18.2-51, 18.2-56.1, 18.2-280(B), 18.2-308.1(B).

It was within the trial court's purview to weigh the mitigating circumstances in this case. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case— those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* The record affirmatively demonstrates that the trial court considered the mitigating circumstances appellant cites on appeal.

Balanced against those circumstances, however, was appellant's "outrageous" conduct in committing the offenses. He ambushed Jones and fired at him repeatedly on a middle school basketball court. Those actions endangered the entire community, including any children who were present in one of the only places open for recreation during the COVID-19 pandemic. The trial

court found appellant's behavior "intolerable" and imposed the sentence it deemed appropriate. Because that "sentence was within the statutory range," review of appellant's claim is "complete" and this Court finds no basis for disturbing the trial court's judgment. *Thomason*, 69 Va. App. at 98.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed*.