COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Ortiz and Friedman

PRECISE EARL MOSLEY

                                                    MEMORANDUM OPINION*
v.        Record No. 1462-22-1                         PER CURIAM
                                                     OCTOBER 24, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Holly B. Smith, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares, Attorney General; David A. Mick, Assistant
Attorney General, on brief), for appellee.


Under a written plea agreement, the trial court convicted Precise Earl Mosley of use of a

firearm in the commission of a felony and two counts of malicious wounding; it sentenced him to a

total of 43 years' incarceration with 33 years suspended.[1]  On appeal, Mosley challenges the

voluntariness of his guilty pleas and argues that his sentence represented an abuse of the trial court's

sentencing discretion.  After examining the briefs and record in this case, the panel unanimously

holds that oral argument is unnecessary because "the appeal is wholly without merit."  Code

§ 17.1-403(ii)(a); Rule 5A:27(a).  The trial court's judgment is affirmed.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Consistent with the written plea agreement, the Commonwealth moved to nolle
prosequi charges of attempted second-degree murder and use of a firearm in the commission of a
felony, and amend a charge of aggravated malicious wounding to malicious wounding.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Before accepting Mosley's guilty pleas, the trial court conducted a thorough colloquy with Mosley to ensure the pleas were entered freely and voluntarily. At the beginning of the colloquy, Mosley confirmed that he could read, write, and understand English and was not under the influence of drugs or alcohol. Mosley assured the trial court that he had discussed the charges with his attorney, including possible defenses and what the Commonwealth would have to prove to sustain convictions. After that discussion, Mosley decided to plead guilty because he was, "in fact, guilty." Mosley understood that by pleading guilty he waived several constitutional rights, including his rights to remain silent, not to incriminate himself, to a jury trial, to confront his accusers, and appeal certain decisions of the court.

The trial court reviewed the entire plea agreement with Mosley, which contained no agreed sentence. Mosley understood that he could be sentenced to the maximum statutory period of incarceration for each offense and that the trial court was not bound by the discretionary sentencing guidelines. He also understood that the use of a firearm charge carried a three-year mandatory minimum term of incarceration. Mosley represented that he had reviewed the entire plea agreement with his attorney and understood its terms. Mosley was entirely satisfied with his attorney and declined the opportunity to ask the trial court any questions.

The Commonwealth proffered that surveillance video at a convenience store depicted Mosley holding a firearm in a convenience store while standing with two other men. A woman and two "males," J.H. and D.R., entered the store, saw Mosley, and immediately returned to their car and drove away. Mosley and his cohorts rushed to their own car and pursued the woman's car. Several "bullets were . . . fired" from Mosley's car toward the woman's car. One bullet struck D.R.'s back; another grazed J.H.'s shoulder. D.R. was rushed to the hospital, where he received emergency surgery to remove his spleen.

Witnesses heard the gunshots and recorded the license plate of the pursuing car, which "returned" to a car "associated with" Mosley. Police found multiple cartridge cases on the road where Mosley's car pursued the fleeing car; the cartridges had been fired from three different firearms. Some of the cartridge cases "matched" a firearm that police subsequently seized from a vehicle Mosley's younger brother drove. Police later arrested another individual, who claimed that he, Mosley, and a third male had been in the pursuing car. That individual said that Mosley and the third male fired at the woman's car. He alleged that Mosley was upset because J.H. had created a rap video that Mosley believed was disrespectful to the victim of a recent murder. Many of the Commonwealth's witnesses had relocated and, while cooperative, did not want to testify.

Following the Commonwealth's proffer, the trial court accepted Mosley's pleas and convicted him of use of a firearm in the commission of a felony and two counts of malicious wounding. At the sentencing hearing, Marcara Davis, Mosley's girlfriend's mother, testified that Mosley had made some "bad decisions" but was not a "bad kid" and "got a raw deal." She doubted Mosley's guilt. Devonte Jeremiah, Mosley's cousin, similarly testified that Mosley was a "good kid" and had not been "in any trouble" until he moved to Virginia from New York. Jeremiah asked the trial court to show leniency. Shankika Pittman, Mosley's aunt, testified that Mosley was a

"good kid" who had considered joining the military after high school. Pittman believed in Mosley's "potential" if he had "the right people guiding him."

Mosley's father, Brian, testified that he moved Mosley to Virginia seven years earlier to give him a better life. Brian claimed that Mosley's troubles started "with a group of children that were all at one time" civil toward each other. Jealously and strife arose among the group as they became adults, and they began to argue with each other over the internet. Brian encouraged Mosley to defend himself consistent with Virginia's "open carry" laws but acknowledged that Mosley went about it the "wrong way." Believing that Mosley's legal troubles stemmed from a misguided and "panick[ed]" attempt to defend himself after he was "backed in a corner," Brian apologized to the court for his advice to Mosley. Brian insisted that Mosley was not "trying to hurt people"; rather, he was a "scared child" looking for answers. Brian asked the trial court to forgive Mosley.

Mosley testified that he was glad nobody had died. Before his offenses, he had been employed full time and was studying welding. Mosley accepted responsibility for his actions and apologized to D.R. and J.H. He admitted that he had caused hurt, suffering, and pain, which he regretted. He expressed remorse for his actions and "begg[ed]" the trial court for forgiveness and mercy, asserting that he was "not a bad person" and had "made a mistake." He aspired to become an underwater welder, get married, and raise a family. Although Mosley claimed he "started to feel bad" about his offenses in January or February 2022, he admitted that he had posted "or caused to be posted" on social media a copy of the police report that alleged the witnesses were "snitches." Mosley also provided documents demonstrating that he had been accepted into a substance abuse recovery program.

After argument by counsel, the trial court sentenced Mosley to a total of 43 years' incarceration with 33 years suspended. The trial court found that Mosley had a "great childhood" and family and "could have a very bright future." Notwithstanding that strong family support,

Mosley committed serious and dangerous offenses, which fortuitously did not result in a "double murder." Explaining its departure above the high end of the sentencing guidelines,[2] the trial court wrote that Mosley "armed himself with a loaded gun, chased after the victims by driving a car . . . , shooting as they fled." He "shot two people" and "posted pictures of the police report identifying witnesses on the internet," whom he claimed were "snitches." Thus, the trial court found that Mosley was "not remorseful or credible."

Mosley appeals, arguing that the trial court erred by accepting his guilty pleas because he did not enter them freely and voluntarily. He asserts that "the record failed to establish" that he "was given notice of the elements of the crime[s] and the range of possible penalties." He contends that the trial court did not ask "Question 9" of "Form 6 of the Appendix . . . for Part 3A" of the Rules, which specifically queries whether a defendant has discussed the "legal elements" of the charges with his attorney. Mosley also argues that he was not "made aware" of various collateral consequences of his pleas, including the loss of his rights to vote and possess a firearm and disqualification of certain public benefits and occupational licenses. Relying on *Padilla v. Kentucky*, 559 U.S. 356 (2010), Mosley suggests that the failure to advise him of those collateral consequences rendered his pleas invalid. Finally, Mosley argues that the trial court failed to ensure that he "possessed the requisite mental competency to knowingly enter his pleas." Mosley acknowledges that he did not move to withdraw his guilty pleas or otherwise preserve his argument for appellate review but asks that we address it under the "good cause" and "ends of justice" exceptions to Rule 5A:18.[3]

---

[2] The discretionary sentencing guidelines recommended between 1 year and 11 months' incarceration and 5 years and 9 months' incarceration, with a midpoint of 3 years and 10 months.

[3] "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18.

Mosley also argues that the trial court abused its sentencing discretion by imposing a disproportionate sentence that exceeded the discretionary sentencing guidelines. He contends that the mitigating circumstances, including his youth, employment, aspirations, minimal criminal record, and acceptance of responsibility, warranted no more than three years' incarceration. He also argues that his family's support and "good and redeeming qualities" demonstrated that he "deserv[ed] . . . mercy." Finally, he emphasizes his remorse for his offenses and acknowledgment that he had "hurt a lot of people." Thus, Mosley concludes that the trial court's resort to a "non-constructive . . . ten-year term of imprisonment was unduly harsh and ignored the factors warranting mercy."

## ANALYSIS

### I. Guilty Pleas

"'Good cause' relates to the reason why an objection was not stated at the time of the ruling." *Pope v. Commonwealth*, 60 Va. App. 486, 508 (2012) (quoting *Campbell v. Commonwealth*, 14 Va. App. 988, 996 (1992) (en banc)). "The Court may only invoke the 'good cause' exception where an appellant did not have the *opportunity* to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (emphasis added) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)).

The trial court accepted Mosley's guilty pleas on June 16, 2022, and entered final judgment on September 15, 2022. Thus, Mosley had over three months to move to withdraw his pleas but failed to do so. *See* Code § 19.2-296 (providing that, "to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea"). Nothing in the record suggests that anything prevented Mosley from filing such a motion. Accordingly, the good cause exception does not

apply because there was ample opportunity for Mosley to alert the trial court to the relief he sought. Moreover, there were valid strategic reasons for not doing so considering the serious charges the Commonwealth moved to nolle prosequi and amend as part of Mosley's plea agreement.

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)).

"In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." *Melick*, 69 Va. App. at 146 (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). Furthermore, to demonstrate that a miscarriage of justice has occurred, "[i]t is never enough for the defendant to merely assert a winning argument on the merits—for if that were enough[,] procedural default 'would never apply, except when it does not matter.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).

A defendant who enters a guilty plea waives several rights, so a "plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

Thus, to withstand scrutiny on appeal, the record must contain "an affirmative showing that [the guilty plea] was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

The record belies Mosley's assertion that "the record failed to establish" that he "was given notice of the elements of the crime[s] and the range of possible penalties." During his plea colloquy with the trial court, Mosley averred that he had discussed the charges with his attorney, including possible defenses and what the Commonwealth would be required to prove to convict him of each offense. Further, he confirmed that he understood the penalties each offense carried, including the three-year mandatory minimum term of incarceration for the use of the firearm charge. He also stated that he understood the trial court was not bound by the discretionary sentencing guidelines. Mosley also knew that he was waiving several important constitutional rights, including his rights to remain silent, not to incriminate himself, to a jury trial, to confront his accusers, and to appeal certain decisions of the court. Thus, the record contains "an affirmative showing" that Mosley's guilty pleas were "intelligent and voluntary." *Boykin*, 395 U.S. at 242.

Mosley cites no authority demonstrating that the trial court was required to review each of the specific elements of the offenses for his guilty pleas to be valid. To begin, the trial court was not required to ask "Question 9" of Form 6 of the Appendix for Part 3A of the Rules, which queries whether a defendant has discussed the "legal elements" of the charges with his attorney. Indeed, it is well established that Rule 3A:8(b)(1) merely "restate[s]" *Boykins*' due process requirement that "before a trial court may accept a . . . guilty plea there must be an affirmative showing that the plea was intelligently and voluntarily made." *James v. Commonwealth*, 18 Va. App. 746, 750 (1994). Form 6 of the Appendix to Part 3A of the Rules, entitled "Waiver of Rights Form," outlines a "suggested procedure" for compliance with Rule 3A:8(b)(1). *Id.* at 750 n.1. A trial court, however, is not required to follow that exact procedure or ask each of the questions on that form. *Id.*

- 8 -

Rather, Rule 3A:8(b)(1) simply requires that "[a] circuit court shall not accept a plea of guilty . . . without first determining that the plea is made . . . with an understanding of *the nature* of the charge and the consequences of the plea." (Emphasis added); *see also* Rule 7C:6; *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (holding that a defendant must receive "real notice of the true *nature* of the charge against him" for a plea to be voluntary (emphasis added) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941))). Here, Mosley affirmatively represented that he had discussed the charges with his attorney, including what the Commonwealth would have to prove to sustain convictions, and any possible defenses that he may have had to the charges. Mosley also understood the respective penalties for each offense. After his discussions with counsel, he decided to plead guilty because he was "in fact guilty." He also understood the important trial rights he was waiving. Thus, he was aware of the nature of the charges and the consequences of his pleas.

Mosley also argues that his guilty pleas were not knowing and voluntary because the record does not demonstrate that he was advised of various "collateral consequences" of his pleas. This argument lacks merit. "For a guilty plea to be constitutionally valid, a defendant must be made aware of all the direct, but not the collateral, consequences of his plea." *Brown v. Commonwealth*, 297 Va. 295, 302 (2019) (quoting *Meyer v. Branker*, 506 F.3d 358, 367-68 (4th Cir. 2007)). Indeed, a "trial court is not required to discuss every nuance of the law regarding a defendant's plea in order to render a guilty plea voluntary and knowing." *Zigta v. Commonwealth*, 38 Va. App. 149, 154 (2002). Moreover, Mosley's reliance on *Padilla* is misplaced because that case addressed a claim that the trial attorney was ineffective for failing to advise his client that he would be subject to deportation; it did not address the voluntariness of the defendant's guilty plea. 559 U.S. at 374-75.

Finally, Mosley argues that his pleas were not voluntary because the trial court "failed to establish for the record that [he] possessed the requisite mental competency to knowingly enter his pleas . . . or otherwise exclude the possibility that [he] was suffering from diminished capacity." To prevail on a claim that a trial judge should have conducted a competency hearing sua sponte, an appellant "must establish that the . . . trial court ignored facts raising a 'bona fide doubt' regarding [his] competency to stand trial." *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000). Moreover, the Fourth Circuit has recognized that counsel's decision not to raise the issue of his client's competence is probative of competency. *Id.* at 192-93. Mosley's counsel did not raise the issue of his competency, and the record contains nothing suggesting any such issue existed. In fact, during the colloquy, Mosley confirmed that he could read, write, and understand English and was not under the influence of drugs or alcohol. Thus, "the evidence in the record overwhelmingly suggests that there was never a bona fide doubt" about Mosley's competency to stand trial. *Id.* at 194.

Accordingly, we conclude that the record contains an affirmative showing that Mosley's guilty pleas were entered knowingly, voluntarily, and intelligently. *Boykin*, 395 U.S. at 242. Thus, no manifest injustice will result by applying Rule 5A:18.

## II. Sentencing

"The sentencing guidelines are advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). Accordingly, a judge's failure to follow the sentencing guidelines is not "reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F). Additionally, this Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 654 (2011). "It lies within the

- 10 -

province of the legislature to define and classify crimes and to determine the punishments for those crimes." *DePriest v. Commonwealth*, 33 Va. App. 754, 764 (2000).

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564-65 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Here, Mosley's sentences were within the sentencing range set by the legislature. *See* Code §§ 18.2-10, 18.2-51, 18.2-53.1.

It was within the trial court's purview to weigh the mitigating circumstances in this case. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* The record affirmatively demonstrates that the trial court considered the mitigating circumstances Mosley cites on appeal and found that he had a "great childhood" and family and "could have a very bright future." Nevertheless, the trial court explicitly found that Mosley was "not remorseful," had senselessly shot two people, and had made posts on the internet branding the Commonwealth's witnesses as "snitches." After weighing all the circumstances, the trial court imposed the sentence it deemed appropriate. That "sentence was within the statutory range, and our task is complete." *Thomason*, 69 Va. App. at 99.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*